Dr. Walter F. Collins, Plaintiff-Appellant, v. People of the State of Illinois, ex rel. Edgar T. Stephens, Department of Registration and Education of the State of Illinois, Vera M. Binks, Director of the Department of Registration and Education, Frederick B. Selcke, Superintendent of Registration, Leo H. Lowitz, Supervisor of Complaints, Board of Dental Examiners, et al., Defendants-Appellees.

Gen. No. 64–58.

Third District.

January 28, 1966.

Jacobs, Ribstein & Lieberman, of Chicago (Eugene Lieberman, of counsel), for appellant.

William G. Clark, Attorney General, of Chicago (Richard A. Michael and Edward A. Berman, Assistant Attorneys General, of counsel), for Department of Registration and Education, et al., defendants-appellees. Peterson, Lowry, Rall, Barber & Ross, of Chicago (Owen Rall and John R. Porter, of counsel), for Edgar T. Stephens, defendant-appellee.

STOUDER, J.

This is an appeal by Plaintiff, Walter F. Collins, from a judgment of the Circuit Court of Peoria County under the provisions of the Administrative Review Act affirming an order of the Department of Registration and Education of the State of Illinois revoking the license of the Plaintiff, Appellant herein, to practice dentistry in the State of Illinois.

On January 27, 1958, Edgar T. Stephens, as Relator, one of the defendants in the Circuit Court, and, one of appellees herein, filed a complaint with the Department of Registration and Education of the State of Illinois, likewise a defendant in the Circuit Court, and, an appellee herein, alleging that appellant had violated the provisions of Chapter 91, Smith Hurd Statutes, 1957, paragraphs 56 thru and including paragraph 72, being commonly referred to as, the Dental Practice Act. The complaint was referred to the Board of Dental Examiners and after several hearings the Board found appellant guilty of

multiple violations of the statute and entered its order on April 3, 1959, recommending to the Department of Registration and Education that appellant's license to practice dentistry in the State of Illinois be revoked. A petition for rehearing was denied by the Department of Registration and Education on July 9, 1959 and on February 15, 1961 the Department of Registration and Education entered its order revoking the license of the appellant. Thereafter, a complaint for review under the provisions of the Administrative Review Act was filed by the appellant in the Circuit Court of Peoria County, against Edgar T. Stephens, Relator, and, the Department of Registration and Education as defendants, seeking a reversal of the order of the Department of Registration and Education. The order of the Department of Registration and Education was affirmed by the Circuit Court of Peoria County on July 1, 1964, and, it is from this judgment of the Circuit Court that this appeal followed.

No issues are raised by the parties on the pleadings or the procedure excepting that appellant makes the general contention that incompetent evidence was received and proper evidence excluded by the Board of Dental Examiners. However, since appellant does not refer to any such evidence in his brief or argument this contention shall be deemed to have been abandoned by appellant and shall not be considered by this court.

Appellant seeking a reversal of the judgment of the court below revoking his license to practice dentistry in the State of Illinois, urges; (1) that even though certain conduct on the part of a dentist may be improper this does not justify revocation of his license to practice unless the offense imparts venality, criminality, fraudulent conduct, moral turpitude or constitutes some danger to the public and (2) that the order of the Department of Registration and Education was against the manifest weight of the evidence and not supported by competent substantial evidence.

Walter F. Collins, appellant herein, was licensed to practice dentistry in the State of Illinois in 1911 and has practiced continuously in Illinois since that time. For a period of approximately 14 years prior to 1947, appellant practiced dentistry at 128 So. Jefferson, Peoria, Illinois and from 1947 to the filing of the complaint practiced at 115 So. Jefferson, Peoria, Illinois. The offices at 115 So. Jefferson, were located on the second floor and consisted of a reception room, a laboratory work room, three dental units and a storage room, and, at the time of the filing of the complaint were occupied by Walter F. Collins and the Peoria Dental Laboratory. The Peoria Dental Laboratory was owned and operated by Dr. H. H. Skolnik, prior to his death in 1953. Mrs. Ethel Skolnik, the widow and executrix of the estate of Dr. H. H. Skolnik, continued an association with the Peoria Dental Laboratory after the death of her husband. Appellant, claimed that he had purchased the dental laboratory in 1954 and Relator, claimed that the laboratory was owned and operated by Ethel Skolnik from the date of her husband's decease until the time of the filing of the complaint.

The substance of the complaint filed with the Department concerns occurrences subsequent to the death of Dr. Skolnik and prior to the date of the filing of the complaint. The complaint alleges that appellant associated himself professionally with an unlicensed person who was practicing dentistry without a license during the period in question, such unlicensed person being Ethel Skolnik, doing business as Peoria Dental Laboratory, 115 So. Jefferson, Peoria, Illinois. It also alleges that appellant advertised unlawfully, and, was holding himself out to the public as a specialist, when in fact he was not authorized to do so, and, that he was practicing dentistry under a name other than his own. Paragraph (2) of the complaint filed with the Department alleges that Mrs. Skolnik is the owner, manager and operator

of a place of business where dental operations are performed, performing dental operations for a fee, offering to furnish, supply, construct, reproduce or repair prosthetic dentures or other substitutes for natural teeth directly to the user or prospective user thereof, and actually furnishing, supplying, etc. said dental appliances to the user or prospective user thereof. All of the above being in violation of Paragraph 62 of Chap 91, Smith Hurd Stat 1957 which provides that: "The department may refuse to issue the license provided for in this Act, or may revoke or suspend any license now in force or that shall be hereafter given, if issued to an individual who has, by false or fraudulent representations, obtained or sought to obtain practice, or, false or fraudulent representations, obtained or sought to obtain money or any other thing of value, or has practiced under a name other than his or her own, or for any other improper, unprofessional, or dishonorable conduct in the practice of dentistry, or is convicted of a felony, or when the licensee is found guilty of any of the following acts or offenses: The Department of Registration and Education may refuse to issue or may suspend or may revoke any license now in force or that shall be hereafter given for any one or any combination of the following causes: . . . 5. Division of fees or agreeing to split or divide the fees received for dental services with any person for the bringing or referring a patient, or assisting in the care or treatment of a patient, without the knowledge of said patient or his legal representative. . . . 6. Employing, procuring, inducing, aiding or abetting a person not licensed or registered as a dentist to engage in the practice of dentistry; provided, that the person practiced upon shall not be deemed as accomplice, employer, procurer, inducer, aider, or abettor within the meaning of this Act. 7. Making any misrepresentations or false promises, directly or indirectly, to influence, persuade or induce dental patronage. 8.

Professional connection or association with, or lending his name to another for the illegal practice of dentistry by another, or professional connection or association with any person, firm or corporation holding himself, themselves, or itself out in any manner contrary to this Act. 9. Obtaining or seeking to obtain practice, money, or any other thing of value by false or fraudulent representations. 10. Practicing under a name other than his own. 11. Improper, unprofessional or dishonorable conduct. . . . 13. A violation of any provision of this Act. . . . 16. Taking impressions for or using the services of any person, firm or corporation violating any of the provisions of Section 5a. 17. Except as otherwise provided in Section 18b, advertising or soliciting by himself or through another by means of handbills, posters, circulars, stereopticon slides, motion pictures, radio, newspapers or in any other manner for professional business."

At the hearings before the Board of Dental Examiners evidence was introduced showing that signs were located just inside the first floor door, at the head of the stairway and in the reception room, each with the following lettering, "PEORIA DENTAL LABORATORY, NEW TYPE PLASTIC PLATES." The reception office was shared by Walter F. Collins and the Peoria Dental Laboratory and contained a glass display case in which approximately thirty-five (35) sets of dentures were displayed together with other dentures on the top of the case. A clock on the wall listed the names of, DR. H. H. SKOLNIK and DR. WALTER F. COLLINS, together with a reference to "NEW TYPE PLASTIC PLATES." Evidence was introduced in the form of copies of pages from the 1957 classified and alphabetical telephone directories for the cities of Peoria and Pekin together with testimony of the officers of the companies in charge of such services showing that for the year 1957 classified ads had been ordered by Ethel Skolnik for publication in each of the directories.

271

The laboratory advertisement in the Peoria directory was a two inch, one column advertisement containing the words:

"PEORIA DENTAL LABTRY
Since 1943
115 S. W. JEFFERSON
2nd FLOOR
DIAL 3-5788
DENTAL PLATES
Dentures Made From Impressions of
Illinois Dentists Only
115 SW Jefferson......3-5788"

In the Pekin classified directory the laboratory advertisement contained the words:

"Dental Laboratories
PEORIA DENTAL LABORATORIES
115 S. Jefferson Av......Peoria 3-5788"

The advertisement for Appellant in the Peoria Directory was comprised of the following:

"WF Collins
Practice Limited to Dentures (Plates)
2nd Floor
115 SW Jefferson......3-5788"

Plaintiff's advertisement in the Pekin classified directory consisted of the words:

"Walter F. Collins
Practice Limited to Dentures (Plates)
115 S. Jefferson Av......Peoria 3-5788"

Appellant in his testimony admitted that the signs were on the premises prior to filing of the complaint

and had been there for at least 11 years according to his knowledge. He also admitted that the telephone directory advertisements for the year 1957 had been placed with his knowledge and consent and that they had been in previous directories.

The ownership of the Peoria Dental Laboratory by Ethel Skolnik was controverted by Appellant. In his testimony Appellant claimed that in 1954 after the death of Dr. H. H. Skolnik and while the estate was being administered, he entered into an oral contract with the executrix, for the purchase of the dental laboratory. No purchase price had been agreed upon according to appellant's testimony, and the arrangement was to have been consummated at some indefinite time in the future. Appellant claimed that Ethel Skolnik was his bookkeeper and office manager and that they jointly agreed on salaries to be paid to employees. It appears that the cash receipts for the services of Walter F. Collins and the laboratory were placed in a common cash drawer to which the appellant and Ethel Skolnik had access, and that from these receipts Ethel Skolnik paid the employees in cash, paid expenses of purchasing supplies, and that both Ethel Skolnik and the appellant made withdrawals from the cash drawer as their needs required and not in any particular prearranged amount. The excess was deposited in the bank to the account of the Peoria Dental Laboratory. An officer of the bank testified that in 1953 a letter of authorization and signature card, both being introduced in evidence, were executed by Ethel Skolnik as the owner of the Peoria Dental Laboratory and that she was the only person authorized to make withdrawals from this account. Both the letter of authorization and signature card were currently in effect at the time the complaint was filed. Appellant claimed that the purchase price which would have been ultimately paid for the purchase of the laboratory, would have in some way been related to the withdrawals of each. Ap-

pellant by subpoena was directed to produce the books and records of the Peoria Dental Laboratory for years 1957 and 1958 but none were produced. Appellant testified he had no knowledge of income tax returns for the years 1954 thru 1957. Ethel Skolnik was also by subpoena, directed to produce the books and records of the laboratory but on the advice of counsel for the appellant she declined to testify or produce any such records by virtue of the 5th amendment to the U. S. Constitution. It appeared from the testimony of two employees, Doris Glenn and Gene McCabe that the employer listed on their withholding tax statements for the year 1957 was H. H. Skolnik. In June of 1958, while the hearings before the Board of Dental Examiners were in progress, the Department of Labor of the State of Illinois and the Department of Unemployment Compensation were notified by Ethel Skolnik of a change in ownership of the Peoria Dental Laboratory to Walter F. Collins and during the same month appellant applied for an employer's identification number from the Division of Social Security of the United States Department of Health, Education and Welfare.

With respect to another phase of the testimony at the hearings, Edgar T. Stephens, Relator and an investigator for the Illinois Dental Society, testified he had called at the offices on November 4, 1957 and talked with Doris Glenn and Gene McCabe. Upon being advised that Walter F. Collins was sick, he made inquiries concerning a partial denture and testified that both of the employees examined his mouth, one of them using a dental mirror. He also testified, that in response to his inquiry about the price of the denture, the two employees consulted with one another and that Doris Glenn stated that the price would be ninety-five dollars ($95). An appointment card containing the date to see appellant and the price of the denture was given to Stephens and he thereafter appeared on the date of the appointment to have im-

pressions made for the denture. On this visit it was the testimony of Stephens that on the request of appellant, Gene McCabe made further examination of his mouth and that the other employee, Doris Glenn, removed and inserted another tray out of the presence of appellant. On this occasion Stephens paid Mrs. Skolnik twenty-five dollars ($25) in cash and five dollars ($5) by check, receiving a receipt therefore. The check was later endorsed by appellant. Stephens testified further that he returned to the office on November 15, 1957 at which time the partial denture was fitted into his mouth by appellant. The denture did not fit properly and after appellant was unable to withdraw the denture it was withdrawn by McCabe. The denture was adjusted and Stephens paid the balance of the cost, sixty-five dollars ($65) to Mrs. Skolnik. Stephens testified that at no time was the cost of the denture discussed with him by appellant. The employees, Doris Glenn and Gene McCabe while admitting to conversations with Stephens denied any physical examination of Stephens excepting that Gene McCabe stated that he did remove the denture from Stephens mouth after Collins broke his thumb nail.

Since appellant filed his complaint for review of the order of the Department of Registration and Education under the provisions of the Administrative Review Act it is conceded by both parties that the order shall be considered prima facie true and that it is the duty of a court to affirm such order unless it is against the manifest weight of the evidence. If the order be supported by substantial competent evidence it is not the duty of the court to reweigh the evidence or substitute its interpretation of the facts for that of the Administrative agency. (Logan v. Civil Service Commission, 3 Ill2d 81, 119 NE2d 754.)

There is no doubt that the right of a dentist to practice his profession is of vital importance and that revocation of his license to practice constitutes a practi-

cal destruction of his livelihood. Such drastic action as revocation should be supported by clear and convincing evidence. By accepting the privilege of practicing his profession the dentist also assumes the responsibilities incident to the trust and confidence placed in him. Chapter 91, Ill Rev Stats 1957, the Dental Practice Act, established the meaning of the practice of dentistry, the qualifications of those permitted to exercise its privileges and the standards of conduct required of those accepting and assuming its privileges and responsibilities. Appellant argues that only conduct which imparts venality, criminality, fraudulent conduct or moral turpitude or constitutes some damage to the public can justify revocation of a license to practice dentistry. With this argument we cannot agree. The grounds for revocation of a license to practice dentistry are clearly set forth in, paragraph 62, chap 91, Ill Rev Stats 1957, and although some of the grounds specified may impart criminality or moral turpitude many others do not. Appellant has not referred us to any authority, nor are we aware of any authority suggesting that improper conduct constituting specific violation of the provisions of the Dental Practice Act must also be accompanied by criminality, venality or moral turpitude in order to sustain revocation of a dentist's license. Appellant has referred us to cases involving attorneys in violation of the Canons of Ethics. These cases do not suggest or support the limitations of specific statutory violations as contended by Appellant. Appellant, by his application for licensing under the statute, must be deemed to have assumed the standard of conduct and responsibility therein imposed.

The Board of Dental Examiners made numerous findings of fact upon which it based its conclusions that appellant was guilty of multiple violations of the Dental Practice Act as charged in the complaint and upon the bases of its conclusions recommended revocation of appellant's license. These findings included all of the

material allegations of the complaint. Of these allegations only the ownership of the laboratory and the incident involving Edgar T. Stephens were controverted by appellant. However, we believe that substantial competent evidence was presented to the Board on each of these issues. Most of the factual indicia of ownership of the laboratory was either admitted by appellant or was not rebutted. With respect to the incident involving Edgar T. Stephens the Board could and did consider the relationship of the parties testifying as well as other evidence bearing on their credibility. With respect to this issue there was likewise substantial competent evidence to support the findings of the Board. We believe that the findings of fact by the Board are not against the manifest weight of the evidence and are supported by substantial competent evidence.

■ Appellant next argues that the facts and findings of the Board do not support its conclusions that appellant was guilty of the violations of the statute as charged. In this connection appellant relies on and quotes extensively from the cases of: (Menning v. Department of Registration & Education, 14 Ill2d 553, 153 NE2d 52, and Bruce v. Department of Registration & Education, 26 Ill2d 612, 187 NE2d 711). From our reading of these cases it appears to us that the only similarities are that each involve a dentist having some relationship with a laboratory. In neither of these cases did a dentist and a laboratory become so closely associated and their relationship so confused nor was there significant evidence of fee splitting or of improper conduct by the laboratory. In the Bruce case, the court concluded that because the examining board itself had not found the charges in the original complaint substantiated by the evidence and because the evidence presented after the case had been reopened was improper, the order of revocation should not be sustained. The case of Dubin v. Department of Registration & Education, 396 Ill 276, 71 NE2d 785, presents a

situation more comparable to that in the instant case. We do not believe that the conclusion reached by the Board are contrary to any of the cases relied upon by appellant with respect to appellant's relationship to the Peoria Dental Laboratory.

■ Appellant also contends that his public representations that he limited his practice to dentures did not constitute a claim of specialization because it was an area of practice permitted under his general license. We find no merit in appellant's contention. Appellant admitted that he was not licensed to practice any particular specialty. Paragraph 59a, of ch 91, Smith Hurd Stats, 1957 is the section of the Dental Practice Act dealing with specialization and after authorizing the creation of specialties in the branches of dentistry provides: ". . . The fact that any licensee shall announce by card, letter head, or any other printed matter using such terms as 'Specialist,' 'Practice Limited To' or 'Limited to Specialty Of,' with the name of such branch of dentistry practiced as a specialty, or shall use equivalent words or phrases to announce the same, shall be prima facie evidence that such licensee is practicing as a specialist." We find nothing in the Statute to suggest that specialization in a branch of dentistry is limited to areas other than those permitted under a general license. The Board was amply justified in concluding that appellant violated this provision of the Statute.

■■ Lastly we consider the propriety of the disciplinary action taken by the Department of Registration and Education. Section 62 of chap 91, Ill Revised Stats 1957 provides that the Department may revoke or suspend any license theretofore issued for any one or more of the causes listed in the section. Although the disciplinary power so granted is broad, it is not unlimited. Its exercise by the Department must be warranted by the facts of the case considered in their relationship to the purposes of the act. The record before us reveals a

278

dentist, a practitioner for many years, who has failed to keep pace with or abide by the advancing ethics of his profession as embodied by the act. The charges proved, when considered with the absence of prior suspension or complaint, do not justify the finality or irrevocability inherent in revocation of appellant's license. Nor is such revocation necessary to secure compliance with the act. Accordingly we believe that the Department's action constituted an abuse of its discretion. Suspension of appellant's license is justified by the record and is consistent with the purpose sought to be accomplished. We believe that the record before us is sufficiently complete that remandment for reconsideration of appropriate disciplinary action is not required and accordingly we find that appellant's license should be suspended for one year.

The order of the Department of Registration and Education being erroneous, the judgment of the Circuit Court of Peoria County is likewise erroneous, and accordingly the judgment of said court is reversed and remanded with directions that upon the mandate of this court becoming final the Order of the Department of Registration and Education, revoking appellant's license, should be modified by providing that appellant's license should be suspended for one year.

Judgment reversed and remanded with directions.

CORYN, P. J. and ALLOY, J., concur.