Walter G. Monroe, Plaintiff-Appellant, v. The Civil Service Commission of the City of Waukegan, Illinois, et al., Defendants-Appellees.

Gen. No. 64-58.

Second District.

February 16, 1965.

Frank M. Daly, of Waukegan, for appellant.

Robert P. O'Meara, of Waukegan, for appellees.

DAVIS, J.

This is an appeal from an order of the Circuit Court of Lake County, entered in a proceeding brought under the Administrative Review Act affirming the decision of the Civil Service Commission of the City of Waukegan.

Plaintiff, Walter Monroe, a lieutenant in the fire department of the City of Waukegan, began service in said department in 1947. He was stationed at the West Side Fire Station for substantially all of the time from June of 1958 to September of 1959. On September 15, 1959, Laura Gonzalez made a complaint to the City which resulted in plaintiff's suspension by the City Fire Marshall for 30 days for conduct unbecoming a member of the fire department.

After serving the suspension, plaintiff returned to work and no further action was taken against him by the City until December 5, 1961, at which time charges were filed with the Commission alleging that plaintiff, while on duty, did "on numerous occasions between the months of June, 1958, and September, 1959, have sexual intercourse with one Laura Gonzalez at a public building" known as the West Side Fire Station, in

violation of certain specified Civil Service Rules. The Commission found the plaintiff guilty of the charges and discharged him as a City fireman.

Plaintiff assigned three grounds for reversal of the action of the Commission: first, that the City of Waukegan was guilty of laches in bringing the charges; second, that the charges were so vague, indefinite and broad as to inadequately apprise him of what he was called upon to defend; and, lastly, that the decision of the Commission is contrary to the manifest weight of, and unsupported by the evidence.

He charged laches in that the City first learned of the charges against him on September 15, 1959, at which time it issued a 30-day suspension, and then waited until December 5, 1961, over two years, before bringing the charges before the Civil Service Commission on these very same facts. The City states, that at the time it was informed of the plaintiff's alleged misconduct, it also was apprised that the complainant was pregnant and that a paternity suit would be commenced after the birth of the child; and therefore it initially delayed bringing this action to await the outcome of the paternity suit.

■ Laches is such neglect or omission to assert a right, taken in conjunction with the lapse of time of more or less duration, and other circumstances causing prejudice to the adverse party, as will operate as a bar in a court of equity. It is thus, principally, a question of the inequity of permitting a claim to be enforced when, during the delay in asserting the right, there has been a change in condition of the subject matter or relation of the parties resulting in a disadvantage to the party against whom the claim is asserted. Freymark v. Handke, 415 Ill 360, 366, 367, 114 NE2d 349 (1953); Trustees v. Skaggs, 280 Ill App 125, 139 (3rd Dist. 1935).

357

■■ Laches, with reference to the subject matter of the claim, is available as a defense only where by the delay the adverse party is lulled into doing that which he would not have done, or into omitting to do that which he otherwise would have done. Elliott v. Pure Oil Co., 10 Ill2d 146, 156, 139 NE2d 295 (1957). Laches may also arise where the voluntary delay of a party would prevent the trier of fact from arriving at a fair conclusion, as where "the evidence of the matters in dispute has been lost or become obscured, so that a court is practically precluded from ascertaining the truth of the matters in dispute, or the conditions have so changed as to make enforcement of the alleged right inequitable." Lutyens v. Ahlrich, 308 Ill 11, 20, 21, 139 NE 50 (1923).

■ Whether or not laches will operate as a bar depends on the particular facts and circumstances of each case. During all of the delay, plaintiff remained on the fire department and collected his wages. There was no change in the subject matter of the suit, or in the relation of the parties resulting in a disadvantage to plaintiff due to the delay in asserting this claim. There was certainly no loss or obscurity in the evidence which prevented the plaintiff from presenting his defense, which was an outright denial that he, at any time, had intercourse with Laura Gonzalez at the fire station, or that he, at any time, had her in the bed there. His testimony was that she was inside the station only once at which time he showed her around, introduced her to one of the men watching T. V. and she then left.

■ The plaintiff also urged the defense of estoppel. While situations may arise which justify invoking the doctrine of estoppel against a municipality when acting in its governmental capacity, there must have been some positive act by the public officers which may

have induced the action of the adverse party under circumstances where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had previously done. However, mere non-action of public officers is not enough to invoke the doctrine. City of Chicago v. Miller, 27 Ill2d 211, 216, 188 NE2d 694 (1963); Gregory v. City of Wheaton, 23 Ill2d 402, 408, 178 NE2d 358 (1961); The City of Quincy v. Sturhahn, 18 Ill2d 604, 614, 165 NE2d 271 (1960); The People ex rel. Petty v. Thomas, 361 Ill 448, 456, 198 NE 363 (1935).

■ Plaintiff's suggestion, that the written charges against him were so vague and indefinite that they failed to inform him of what he was called upon to defend, is untenable. These charges specified that plaintiff, while on duty as a member of the fire department, "did, on numerous occasions between the months of June, 1958, and September, 1959, have sexual intercourse with one Laura Gonzalez at a public building owned by the City of Waukegan" and known as the West Side Fire Station.

The plaintiff served a Demand for a Bill of Particulars specifically asking for the times and dates when these acts occurred. The Answer stated that the activity charged took place between the hours of 11:00 p. m., and 7:00 a. m. on numerous dates between June, 1958 and September, 1959, the specific dates not being known. This information was apparently provided by Laura Gonzalez, who testified at the hearing that she got off work at the hospital at 11:00 p. m.; that on certain shifts Monroe worked from 11:00 p. m. to 7:00 a. m.; and that she had sexual intercourse with him at the station between these hours on numerous occasions, but that she couldn't remember any specific dates.

Rule 7, Section 2 of the Civil Service Commission Rules of the City of Waukegan, provided that written

charges should be filed which "shall state specifically the facts alleged to constitute the cause for discharge." The proceeding before this Commission was an investigation, not a proceeding in a court of law. The object of the written charges against plaintiff "is simply to apprise him with reasonable certainty of the accusations he must meet on his trial; it is merely a means to the end that he should have a fair opportunity to defend himself—not an end in itself." Heaney v. City of Chicago, 117 Ill App 405, 414 (1st Dist. 1904); also see, Joyce v. City of Chicago, 216 Ill 466, 471, 75 NE 184 (1905); Gigger v. Board of Fire & Police Com'rs of East St. Louis 23 Ill App2d 433, 438, 163 NE2d 541 (4th Dist. 1960).

Plaintiff's only complaint could be that specific dates of the alleged acts were not set forth. In view of the long period of time involved, and the nature of the complaint, such specificity was not required in order to reasonably apprise him of the charges he must defend.

■ Plaintiff also contended that the decision of the Civil Service Commission is contrary to the manifest weight of, and unsupported by, the evidence. The function of the Court in this respect is clear. The findings and conclusions of the Commission on questions of fact are deemed prima facie true and correct. Section 11, Administrative Review Act (Ill Rev Stats 1963, c 110 par 274). The reviewing court may examine these findings to determine if they are supported by the evidence, but they can be set aside only if against the manifest weight of the evidence. Thus, if there is competent evidence to support the findings, the decision will be affirmed. Fenyes v. State Employees' Retirement System, 17 Ill2d 106, 111, 160 NE2d 810 (1959); Zinser v. Board of Fire and Police Com'rs of Belleville, 28 Ill App2d 435, 438, 172 NE2d 33 (4th

Dist. 1961); Nolting v. Civil Service Commission of Chicago, 7 Ill App2d 147, 158, 129 NE2d 236 (1955).

The evidence in the case at bar was conflicting. The Commission heard and observed the witnesses, four on behalf of the City and two on behalf of the plaintiff. This Court has reviewed the transcript of the proceedings before the Commission and both abstracts filed herein, and therefrom concludes that the witnesses produced by the City presented evidence sufficient to support the findings of the Commission. The judgment of the Circuit Court should therefore be affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.