82 Ill. App.2d 288 (1967)
226 N.E.2d 679
Murray Wolbach, Jr., Plaintiff-Appellant,
v.
The Zoning Board of Appeals of The City of Chicago, Lake Shore Drove Synagogue, Frank J. Oehlschlaeger, Owners of 59-65 E. Oak, Owners of 111 E. Oak, The Greater North Michigan Avenue Association, Rose Minwiggen (Same Person as Rose Mangan), Mary Goller, 103-107 E. Oak Street Property, Inc., and Mrs. George Dow, Defendants-Appellees.
Gen. No. 51,328.
Illinois Appellate Court  First District, First Division.
April 10, 1967.
*289 *290 Samuel W. Block and Muller Davis, of Chicago (Raymond, Mayer, Jenner & Block, of counsel), for appellant.
Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Howard C. Goldman, Assistant Corporation Counsel, of counsel), for appellee, Zoning Board of Appeals of the City of Chicago.
Irving Goodman, of Chicago, for appellee, Lake Shore Drive Synagogue.
MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.
This is an administrative review action in a zoning case. Plaintiff appeals from a Circuit Court judgment, which affirmed a special use order of the Zoning Board of Appeals of Chicago for the construction of a synagogue at 70-104 East Oak Street, Chicago.
Plaintiff's theory of the case is that the Zoning Board of Appeals committed reversible error by: (1) giving an unreasonably vague decision which is incapable of enforcement; (2) making findings which were insufficient as a matter of law; (3) making an essential finding *291 which was not supported by competent evidence; and (4) the admission of prejudicial hearsay evidence.
Plaintiff states that East Oak Street, between Rush and Lake Shore Drive, is predominantly a retail commercial street in its first floor and English basements on both its north and south sides, with heavy automobile traffic. There are various small shops, including art galleries, men's and women's apparel stores, decorative hardware stores, a beauty salon, a portrait photographer, dry cleaning establishments, a wedding consultant, and others. There is a motion picture theater, a Christian Science reading room, and three taverns. Sixteen percent of the frontage is residential.
The record before the Zoning Board included the application affidavits, letters, an order of Zoning Administrator, dated July 6, 1965, stating that the application was not approved, and a report from the Commissioner of the Department of Development and Planning, dated September 13, 1965, indicating a conditional approval of the application. Public hearings were had, and witnesses for the applicant and for the opponents testified at length.
The Rabbi for the applicant testified that the synagogue has been identified with Oak Street since 1962 and is presently located on the second floor of 50 East Oak Street. 70-104 East Oak was selected because the location is central to the Jewish population residing in the area, beginning with the River and going north to North Avenue. It serves both the Jewish residents who live in the residential area as well as the transients in the hotels within walking distance of the synagogue. They were unsuccessful in their attempts to find another suitable location. The Rabbi further testified that their plans do not call for off-street parking. The members of the congregation are prohibited by their faith from the use of motor vehicles on the Sabbath and high religious *292 holidays. Services are held during the week, attended by 10 to 50 people. The synagogue has a membership of 300 persons. The planned structure will include a chapel for about 50 to 75 seats and a sanctuary with expanding walls to accommodate up to 500 persons. There will be two clubrooms for youth clubs and a small social hall. Weddings and memorial services will be conducted but not funerals.
Plaintiff testified that the construction of any building, religious or not, which breaks up the continuity of the commercial character of the north side of Oak Street, will diminish pedestrian traffic on the street because of the lack of interest created by the withdrawal of interesting commercial space. The present synagogue is on the second floor, and there are shops below. He further stated: "Oak Street is just developing. We would prefer to see the development of an Oak Street of a commercial character because we believe that it is to the advantage of both sides of the Street to have it so.... I think it is pretty widely known that the continuity of commercial property along a commercial street is extremely important."
The decision and order was entered September 28, 1965, as follows:
"WHEREAS, the Lake Shore Drive Synagogue, for the Continental Illinois National Bank and Trust Co. of Chicago, Trustee, filed July 29, 1965, an application for a special use under the zoning ordinance for the approval of the location and the erection of a church building, in a B7-6 Restricted Central Business District, on premises at 70-104 East Oak Street; and
"WHEREAS, the decision of the Office of the Zoning Administrator rendered July 6, 1965 reads:

*293 "`Application not approved. Proposed improvement does not conform with the requirements of the Chicago Zoning Ordinance.'
"and
"WHEREAS, a public hearing was held on this application by the Board of Appeals at its regular meetings held on September 15 and September 23, 1965 after due notice thereof by publication in Chicago's American on August 27, 1965; and
"WHEREAS, the district maps show that the premises are located in a B7-6 Restricted Central Business District; and
"WHEREAS, the Board of Appeals, having fully heard the testimony and arguments of the parties and being fully advised in the premises, finds that in this case the proposed use is to be located in a B7-6 Restricted Central Business District; that the said congregation is a member of the Orthodox faith of Judaism which prohibits the use of motor vehicles on the Sabbath and on the high religious holidays; that the proposed use is necessary for the public convenience at this location; that it is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and that it will not cause substantial injury to the value of other property in the neighborhood in which it is to be located, it is therefore
"RESOLVED, that the application for a special use be and it hereby is approved and the commissioner of Buildings is authorized to issue a permit to erect a church building, on premises at 70-104 E. Oak Street, upon condition that applicant endeavors to make arrangements with some parking facility in the immediate area to store automobiles and alleviate any traffic generated because of the *294 construction of the proposed synagogue; that all applicable ordinances of the City of Chicago shall be complied with and that plans in triplicate shall be identified as the plans approved by the Board of Appeals before a permit is issued."
Initially, we agree with plaintiff that part of the Board's decision is vague, viz., the provision that the application is approved "upon condition that applicant endeavors to make arrangements with some parking facility in the immediate area to store automobiles and alleviate any traffic generated because of the construction of the proposed synagogue."
[1, 2] Plaintiff argues that the parking facility condition is incapable of enforcement, and for that reason the decision of the Board should be reversed. Missouri Pacific R.R. v. Commerce Comm., 401 Ill. 241, 81 NE2d 871 (1948), is cited for the rule that orders of an administrative agency may be so indefinite as to be invalid (p 250). We believe that every reasonable doubt should be resolved in favor of the Board's order. We do not view the parking facility condition as a determinative factor in the consideration of the merits of the Board's order. Therefore, we have determined the validity of the Board's approval of the special use without regard to the vagueness of the parking facility condition or its enforceability.
Plaintiff next contends that the findings of the Board are "in the words of the Municipal Code of Chicago" and are insufficient as a matter of law. Supporting citations include International Harvester Co. v. Zoning Board, 43 Ill. App.2d 440, 193 NE2d 856 (1963), where it is said (pp 450-451):
"We are of the opinion that findings of fact must be made in cases of special use; that in the present case no findings were made in reference to the performance standards; that the findings which were *295 made in reference to the other standards were too general and just repeated verbatim the language of section 11.10-4 of the ordinance, and in one or two instances the findings were not supported by substantial evidence."
On this point, plaintiff argues that the Board's resolution has "no specific fact findings, insofar as public convenience or substantial injury is concerned."
[3, 4] Without further discussion, we agree that findings of facts specifying the reason or reasons for making the variation are required in special use cases, but we are not persuaded that the findings of the Board resolution are insufficient here. There is substantial evidence in this case which supports the conclusions and findings of the Board that the proposed special use is necessary for the public's convenience at the location, that public health, safety and welfare will be protected, and that it will not cause substantial injury to the value of the other property in the neighborhood. Considering the special use intended here, we hold that the Board findings were sufficient as a matter of law, although the findings may have been substantially set forth in the language of the Municipal Code of Chicago.
Plaintiff also contends that the finding in regard to health, safety and welfare is not supported by competent evidence. Plaintiff asserts that "the only evidence in the record of any support to this finding is that generally the present membership walks and the synagogue does not `officially permit' vehicular transportation on the Sabbath and the High Holidays. This testimony obviously does not cover other days in the year, Synagogue activities to which the public is invited, or expanded membership. The uncontradicted evidence relevant to these subjects was that the Synagogue membership was expanding, the planned edifice would have a seating capacity of 500 persons, the Street was congested with *296 traffic, ... and there would be many Synagogue activities, of a public nature, not occurring on the Sabbath or the High Religious Holidays for which there was no prohibition on the use of vehicular transportation. The Report of the Department of Development and Planning includes the contradictory conclusions that `the lack of off-street parking may create traffic problems,' and `the location of the proposed synagogue [is] acceptable trafficwise.' The mere recitation of this hearsay, not illuminated by cross-examination, illustrates why it cannot be accepted as evidence to support the finding where the testimony failed so to do."
[5-7] As contended by plaintiff, this court may set aside administrative findings if manifestly against the weight of the evidence. (Menning v. Department of Registration, 14 Ill.2d 553, 561, 153 NE2d 52 (1958).) "On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence." (De Grazio v. Civil Service Commission, 31 Ill.2d 482, 489, 202 NE2d 522 (1964).) In order to reverse the administrative order, it is required that an opposite conclusion be clearly evident. Bruno v. Civil Service Commission, 38 Ill. App.2d 100, 107, 186 NE2d 108 (1962).
[8] The increased traffic arguments advanced by plaintiff, if followed, would be sufficient to bar all religious worship from the commercial areas of Chicago. "Such arbitrary prohibition is not consonant with the constitutional guarantees of freedom of religion...." (Columbus Park Congregation v. Board of Appeals, 25 Ill.2d 65, 73, 182 NE2d 722 (1962).) We note plaintiff testified that the proposed synagogue would diminish pedestrian traffic because of the lack of interest created by the withdrawal of the interesting commercial space. We think this same reasoning could apply to vehicular *297 traffic. We believe remarks made by our Supreme Court in Columbus Park Congregation v. Board of Appeals (p 72) apply here:
"It is apparent that churches in any location will add to traffic and parking congestion during hours of worship. However, there is no evidence in the record before us to show any danger of a traffic or parking problem that would justify this particular use of the police power to limit the fundamental right of freedom of worship.... We, therefore, hold that to deny plaintiffs the right of worship at this location, upon the speculative fears of traffic congestion, bears no reasonable relation to the general health, safety and welfare."
Plaintiff next contends that the Board received and replied on hearsay evidence on the "vital issue of traffic congestion." The record includes a letter from John G. Duba, Commissioner of the Department of Development and Planning, to John P. Maloney, Zoning Administrator, dated September 13, 1965, in which it is said: "The Department of Streets and Sanitation finds the location of the proposed synagogue acceptable trafficwise; however, they suggest that applicants endeavor to make arrangements with some parking facility in the immediate area to store cars and alleviate any traffic generated because of construction of this synagogue at this location." The record shows that counsel for plaintiff objected to the "City Planning Commission" recommendations "upon the ground that I have not had the opportunity to cross-examine the City Planner in respect to the recommendations which he made." The Board findings do not specifically refer to the September 13, 1965, report of the Department of Development and Planning. A finding was made that the decision of the Office of the Zoning Administrator read: "Application not approved. *298 Proposed improvement does not conform with the requirements of the Chicago Zoning Ordinance." If the Duba report was favorably considered by the Zoning Board, including the suggested parking facility condition, the record does not show that plaintiff was deprived of the right to subpoena and cross-examine Mr. Duba or to offer evidence in rebuttal to his report. Accordingly, we find no merit to the contention that the Board relied upon hearsay evidence in its findings or that the use of hearsay "materially affected the rights of any party and resulted in substantial injustice to him." Ill Rev Stats, c 110, § 275 (2).
We have examined the authorities submitted by plaintiff to show how other communities have dealt with traffic problems created by church activities, but we find no guidelines that are persuasive here or that require discussion.
[9, 10] This record shows that the Board conducted a full, fair and impartial hearing after adequate notice, with an opportunity to all parties to know of the evidence to be submitted or considered, to cross-examine witnesses, to inspect documents, and to offer evidence in explanation or rebuttal. See Rutledge v. Department of Registration and Education, 77 Ill. App.2d 103, 123, 222 NE2d 195 (1966). We hold that the findings of the Board were based on substantial evidence in the record and are not manifestly against the weight of the evidence.
For the reasons stated, the judgment of the Circuit Court is affirmed.
Affirmed.
BURMAN and ADESKO, JJ., concur.