St. James Temple of the A. O. H. Church of God, Inc., a Religious Corporation, James Johnson, as Its Minister, Willie Watson, and Willie B. Carter, Plaintiffs-Appellants, v. The Board of Appeals of the City of Chicago, B. Emmet Hartnett, Earl J. McMahon, Hubert F. Messe, Karl M. Vitzthum, and John P. Kringas, as Its Members, the Department of Buildings, City of Chicago, Sidney Smith, Commissioner of Buildings of the City of Chicago, the Bureau of Zoning of the City of Chicago, John P. Maloney, Zoning Administrator of the City of Chicago, and the City of Chicago, a Municipal Corporation, Defendants-Appellees.

Gen. No. 52,220.

First District, Second Division.

October 15, 1968.

Rehearing denied November 8, 1968.

BURKE, J., dissenting.

Morgan, Halligan, Lanoff & Cook, of Chicago (Samuel M. Lanoff and Philip L. Bransky, of counsel), for appellants.

Raymond F. Simon, Corporation Counsel, of Chicago (Marvin E. Aspen, Assistant Corporation Counsel, and Harry H. Pollack, Special Assistant Corporation Counsel, of counsel), for appellees.

MR. JUSTICE McNAMARA delivered the opinion of the court.

This is an appeal by plaintiff from an order of the trial court affirming the decision of the Board of Appeals of the City of Chicago denying a special use permit for a church at 856 West 79th Street, Chicago. The case originally was appealed directly to the Supreme Court which transferred it to this court. The transfer order of the Supreme Court stated in part: "Although plaintiff claims that there is a question of freedom of religion presented, we find no substantial question of that nature in the record. The case involves only the usual factors present in every zoning case and we have no jurisdiction on direct appeal."

The church appeals, contending (1) that the denial of its application for a special use was arbitrary, capricious and bore no substantial relation to the public health,

safety and welfare and (2) that the judgment should be reversed because the order of the Board of Appeals contained insufficient finding of facts.

The plaintiff St. James Temple of the A. O. H. Church of God, Inc. is a religious corporation organized in 1945 under the laws of Illinois and a member of a national organization. The church had been located at 3028 South Michigan Avenue and 3158 South Wentworth Avenue, Chicago. The church then located at 508–510 East 67th Street, Chicago, where it operated under a permit granted by the Board of Appeals. In February, 1965, the church purchased the premises at 856 West 79th Street for $20,000 because the 67th Street property had been acquired by Hull House of the Parkway Community Center.

The property at 856 West 79th Street consists of a two-story brick building. The main floor had been a store and is now used as a church, while the upper floor contained living quarters. The property is bounded on the south by 79th Street, on the north by an alley, on the west by Peoria Street and on the east by a store. Leo High School is located across the street from the subject property.

The neighborhood in which the property lies is used for residential and business purposes. The site in question is zoned B4–2. B4–2 is a classification under the Chicago Zoning Ordinance for a Restricted Service District. A Restricted Service District is designed to furnish areas served by Restricted Retail Districts with a wide variety of necessary services not permitted within Restricted Retail District zoning.

Under the ordinance, a church is a permitted use in certain residential districts, R–1 to R–8. However, a church is not a permitted use in either B–2 or B–4 business districts, but is designated as a special use which may be allowed only pursuant to certain variation pro-

305

visions of Article 11 of the ordinance. (Municipal Code of Chicago 1965, c 194A, Chicago Zoning Ordinance.)

Article 11 provides in part as follows:

§ 11.10–4 Standards. No special use shall be granted by the Zoning Board of Appeals unless the special use:

(1) a. Is necessary for the public convenience at that location;

b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is located; and

. . .

(4) Such special use shall conform to the applicable regulations of the district in which it is to be located.

Article 8.11–1 (4) of the ordinance requires one off-street parking space for every twelve seats in the church.

On March 16, 1965, while the property already was being used for church services, plaintiff filed an application with the office of the Zoning Administrator of Chicago for a permit to use the premises as a church. The application was denied. On April 15, 1965, plaintiff filed an application with the Zoning Board of Appeals of the City of Chicago for a special use permit pursuant to section 8.4–4 of the Chicago Zoning Ordinance. The application specified that the property was zoned B4–2, that the owners acquired the property for use as a church, that the congregation was small, respectable and seeking a permanent home, that the special use permit was necessary for the public use and would be designed and operated so as not to interfere with or harm the public health, safety and welfare of the community, that the use did not cause injury to the adjacent property, that the applicants

would keep the property in good condition, making it a credit to the neighborhood and that because of the small size of the congregation, there would be adequate off-street parking. Pursuant to the zoning ordinance Articles 11.4–1 and 11.10–2, this application was referred to the Commissioner of City Planning. On May 5, 1965 he recommended that the Board of Appeals deny the application to establish the church as not being compatible with existing uses and structures in the area. He stated that both sides of 79th Street from Peoria to Halsted Streets were business uses, that to the west of the property was Leo High School extending from Peoria to Sangamon Streets with a combination parking lot and play yard on the north side of the street, that the Department of City Planning both from a land use and city planning standpoint was opposed to storefront churches and that no parking provisions were intended. The Board of Appeals served notice of a hearing upon all property owners within the vicinity of the subject property. In response to that notice, written objections were received from individual property owners and two civic organizations. These written objections referred to insufficient parking space, devaluation of adjacent property and disapproval of storefront churches.

A hearing was conducted by the Board of Appeals on June 8, 1965. At that hearing, William Richardson, 1049 East 72nd Street, Chicago, assistant pastor of the church, testified that religious services were conducted on Sunday from 11:15 a. m. to 2:00 p. m. and on Monday at 1:00 p. m. Regular meetings were held on Tuesday and Friday evenings. Willie Watson, 14 East Englewood, Chicago, secretary-treasurer and business manager of the church, testified that there were 60 seats in the church but that the congregation consisted of about 35 people and there had never been more than 45 persons in attendance at Sunday services. He also stated that the weekday meetings were attended by about two persons. He further

307

testified that there were parking facilities for approximately 4 or 5 cars behind the church. When one of the members of the Board of Appeals stated that they had received many objections to the location of a storefront church in a business district because it would devalue the adjoining property, Watson stated that the church did not intend to devalue the neighborhood.

For the objectors, Allen Streeter, representing the Auburn Park Improvement Association, testified that the neighbors, merchants and his organization objected to a church being located in this business district because the parking facilities were inadequate and because storefront churches were detrimental to the community. Streeter also testified that there were many churches in the community but not in the vicinity of this property. Joe Jackson, who lived directly behind the church, testified that not more than two cars could park behind the building. Hezkiah Reed and Henry Dungy, who lived on the same block, both testified that parking facilities were crowded during Sunday services.

James Norris testified that he was a staff member of the Organization of Southwest Community and that this organization represented 150 affiliated groups in the community. He stated that on the day the church moved into the premises he inquired of the workers if they had permission from the city to use the premises as a church and was told that they had. After checking, he discovered that they did not have a permit and he then filed a complaint with the city building department. Norris also testified that his organization was opposed to churches in this business area because 79th Street was a traffic controlled street and the merchants in the busy shopping area near Halsted Street were already having much difficulty with parking facilities. He further testified that only two cars could be parked in the rear of the church.

The alderman of the ward within which the church property is located, James C. Murray, testified that he

appeared in response to a large number of objections from residents in the neighborhood. While the neighbors were not opposed to churches, they were opposed to locating a church in a district composed of small businesses, near a furniture store and department stores already having parking problems. Based upon the objections of the property owners and community organizations, and based upon the fact that the church had failed to make a proper showing before the Board of Appeals, Alderman Murray requested that the application for a special use be denied. The Board of Appeals denied the application for the special use permit. This finding was affirmed by the Circuit Court on administrative review.

■ On administrative review, the court's function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of evidence. DeGrazio v. Civil Service Commission of City of Chicago, 31 Ill2d 482, 202 NE2d 522 (1964). A reviewing court may examine the findings to determine if they are supported by the evidence. If there is competent evidence to support the findings, the decision will be affirmed. Monroe v. Civil Service Commission of City of Waukegan, 55 Ill App2d 354, 204 NE2d 486 (1965). The validity of a special use ordinance is well settled and the burden is on the plaintiff to satisfy the standard it imposes. Audino v. Board of Appeals of Chicago, 75 Ill App2d 347, 221 NE2d 34 (1966).

We find that the decision of the Board of Appeals is amply supported by the evidence and that the congregation failed to establish that it was entitled to a special use under the zoning ordinance of the City of Chicago.

■ Plaintiff offered no evidence whatsoever as to the first requirement of the ordinance that "the special use is necessary for the public convenience at that location." While we recognize that the presence of a church brings benefits to any neighborhood, plaintiff failed completely to show that the church was necessary for the

309

public convenience at its proposed site. There was no showing that this area had been assigned to the congregation for its ministry or that any members of the congregation even lived within the vicinity of the church. In fact, both of the church officers who testified for the congregation, lived in areas far from the proposed location of the church. Further, under the zoning ordinance, churches are permitted uses in certain districts, but plaintiff adduced no evidence of any effort having been made to locate the church in a permitted district rather than in a district where a special use was required. Plaintiff argues that the proposed premises are suited to the needs of the congregation, and that it is the convenience of the applicant to satisfy its needs which determines what is necessary for the public convenience. This argument not only overlooks that part of the ordinance which states "at that location," but also urges that public convenience means convenience of the applicant. This is not the law. Illinois Bell Tel. Co. v. Fox, 402 Ill 617, 85 NE 2d 43 (1949); Rosenfeld v. Zoning Board of Appeals of Chicago, 19 Ill App2d 447, 154 NE2d 323 (1958).

■ As to the requirement of the ordinance that the special use must be "so designed, located and proposed to be operated that the public health, safety and welfare will be protected," the testimony of all the objectors was that the church caused traffic congestion and additional parking problems to a business district already plagued by inadequate parking facilities. We realize that traffic congestion during church services is always present no matter where a church might be located, but a municipality must consider traffic and parking as important factors in determining whether the public safety and welfare are protected through the grant of a special use.

■ Plaintiff failed to offer any evidence that the special use would not cause substantial injury to the value of other property in the neighborhood. When asked by one of the members of the Board about the concern of

310

objectors that storefront churches located in business districts devalue property in the adjoining neighborhood, the secretary-treasurer of the church testified that the congregation did not intend to degrade the neighborhood. However, this statement of intent was not sufficient to meet the burden of proof required of an applicant in obtaining a special use. In view of the church's failure to present any such evidence and in view of the objections received, the Board was justified in finding that the grant of a special use would in fact cause substantial injury to the value of other property in the neighborhood.

The zoning ordinance also requires that the special use conform to the applicable regulations of the district. One such regulation was that the church must have one parking space for every 12 seats in the church. The evidence disclosed that the church had 60 seats and that average attendance at Sunday services was 35 persons. The witness for the congregation testified that there was parking space for 4 or 5 cars while two objectors testified that there was space for only two cars. Even if it could be argued that only 3 parking spaces were necessary because the congregation consisted of 35 persons, there was still a conflict in testimony as to the amount of parking available. Under such circumstances, the Board would have been justified in finding that the special use did not conform to the applicable regulations of the district.

■ Plaintiff congregation relies on Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals of City of Chicago, 25 Ill2d 65, 182 NE2d 722 (1962) wherein the Supreme Court reversed the decision of the Board of Appeals of Chicago and granted a special use to a congregation of Jehovah's Witnesses for a church in an area which was zoned B4–2. While there are many factual similarities, the Columbus case is distinguishable from the instant case in several important respects. There the congregation purchased the premises,

then applied immediately for a special use prior to using the premises as a church. The Supreme Court found that it was improper to deny a special use upon speculative fears of traffic congestion, cautioning that the right of freedom of religion rises above property rights, inconvenience, annoyance or unrest. However, in the case at bar, immediately after purchase of the property, the congregation commenced using the premises as a church without seeking permission from the city. While we do not agree with the city's argument that such illegal use of the premises by the congregation of itself would have entitled the Board of Appeals to deny the permit, we do find that the testimony of the objectors regarding traffic congestion was not speculative. These witnesses were neighbors who were testifying as to what they had observed since the church had begun its operation. Further, in the Columbus case, the congregation was assigned that particular area in Chicago for its ministry and had been directed to serve the members living in the area in which they sought to establish their church. In the instant case, no evidence was presented of even minimal contact between the church and the neighborhood. The area was not assigned to the congregation, nor had the church ever been identified with the neighborhood. No evidence was presented that any of the congregation lived in the neighborhood. In the Columbus case, the congregation also had attempted to purchase other property in the same general area, but were unable to do so. In the case at bar, no evidence was presented that the congregation had attempted to acquire any other premises in that part of the neighborhood where a special use would not be necessary.

Similarly, in Wolbach v. Zoning Board of Appeals of Chicago, 82 Ill App2d 288, 226 NE2d 679 (1967) this court affirmed a special use grant for the construction of a synagogue in a district zoned B4–2. In that case the synagogue had been identified with the area for

312

several years and in fact was located down the street from the proposed site. The synagogue was intended to serve its members living in that vicinity, and it was shown that the congregation had been unsuccessful in trying to find other suitable locations.

Plaintiff also contends that the decision should be reversed because the Board of Appeals failed to make a sufficient finding of fact in its order denying the application for a special use.

 Plaintiff failed to raise this point in the trial court, and first raised it in this court in its reply brief. This court will consider only such questions as were raised and preserved in the trial court, and this principle likewise applies to a review of an administrative determination. Leffler v. Browning, 14 Ill2d 225, 151 NE2d 342 (1958); Des Plaines Currency Exchange, Inc. v. Knight, 29 Ill2d 244, 194 NE2d 89 (1963). Since the issue was not raised in the trial court, we do not consider it a proper subject for review.

 Although mindful of the constitutional guarantee of freedom of religion and of the importance of houses of worship to any community, it is our opinion that the congregation failed to establish its right to a special use at the proposed location. Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

LYONS, J., concurs.

BURKE, P. J., dissenting:

The holding in Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals of City of Chicago, 25 Ill2d 65, 182 NE2d 722 (1962), strongly supports the position of the plaintiffs in the case at bar. The undisputed testimony of Willie Watson and William Richardson, called by the plaintiffs, established the ef-

forts of the congregation to find a suitable and convenient location and building for use as a church. The church purchased the property in February 1965 at a cost of $20,000 and thereupon commenced operation as a church. The building and grounds are suited to the needs of the congregation. There is ample room for the 35 members with room for expansion. The parking facilities meet the requirements of the ordinance. The Congregation of St. James Temple was founded in Chicago in 1945 and is a part of the parent church which has a national membership of 75,000 persons. The general health, safety and welfare of the community are not impaired by this church or its congregation. The community in fact benefits from its existence and location in the area.

The defendants, the Board of Appeals, and the trial court fail to recognize the applicability of the decision in Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals of City of Chicago, 25 Ill2d 65, 182 NE2d 722 (1962), to the factual situation of the instant case. In Columbus Park Congregation the court said, page 72:

> "It is apparent that churches in any location will add to traffic and parking congestion during hours of worship. However, there is no evidence in the record before us to show any danger of a traffic or parking problem that would justify this particular use of the police power to limit the fundamental right of freedom of worship. (Diocese of Rochester v. Planning Board, 1 NY2d 508, 136 NE2d 827; Board of Zoning Appeals of Decatur v. Jehovah's Witnesses, 233 Ind 83, 117 NE2d 115, 120.) We, therefore, hold that to deny plaintiffs the right of worship at this location, upon the speculative fears of traffic congestion, bears no reasonable relation to the general health, safety and welfare."

314

The same court in addressing itself to the problem of detrimental effect of a church in a solid business block stated, page 73:

> "Such testimony ignores the fact that such business continuity would likewise be interrupted by a dance hall, crematory, mausoleum or trade school, all uses permitted in this B4 district. We are unable to see how the use as a church is more harmful to adjacent stores than the aforementioned permitted uses.
>
> "The arguments advanced by defendants, if followed, would be sufficient to bar all religious worship from the commercial areas of Chicago. Such arbitrary prohibition is not consonant with the constitutional guarantees of freedom of religion, nor do we believe it is consistent with the intent of the ordinance."

See also Wolbach v. Zoning Board of Appeals of Chicago, 82 Ill App2d 288, 226 NE2d 679.

The litigation herein involves a changing neighborhood. The plaintiff church is a religious organization of excellent reputation and has been at this site for more than two years with a resulting salutary effect. It is an asset to the community and no one can say that it has been or is a detriment to the public health, safety and welfare of the community. The judgment should be reversed and the cause remanded with directions commanding the defendants to issue the special use permit allowing the plaintiffs to operate a church.