BENJAMIN A. RASKY, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Defendants-Appellees.

First District (5th Division) No. 79-334

Opinion filed June 27, 1980.—Rehearing denied September 12, 1980.

Benjamin A. Rasky, of Skokie, for appellant, *pro se.*

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) from an order of the circuit court affirming the revocation of plaintiff's real estate broker's license by the Department of Registration and Education (Department).

The Department issued a complaint against plaintiff setting forth a number of conditions existing in certain apartment buildings owned and operated by him which allegedly were in violation of the Municipal Code of Chicago and endangered the health and safety of the inhabitants. The complaint asked that plaintiff's real estate broker's license be suspended or revoked, pursuant to section 15(e)(11), (12) of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 115(e)(11), (21)) and Rule XI of the Department Rules and Regulations.

The real estate examining committee of the Department (Committee) held a hearing on the complaint at which plaintiff, an attorney, did not appear. The first of two city of Chicago code inspectors testified to inspections of three buildings. One was an occupied 63-unit apartment building located at 5621-25 North Winthrop, concerning which he stated that in November 1973 he found approximately 25 building code violations—including peeling paint, broken windows, leaking faucets, rat debris, garbage, and general neglect to locks and doors; that on January 3, 1975, he noted that 11 of the violations had not been corrected; that on November 18, 1975, he found the premises to be in worse condition than they were in November 1973; that an inspection in June 1976 revealed numerous code violations—including the fracture of an exterior wall, peeling paint, broken plaster, leaking faucets, defective plumbing, rats, roaches, garbage, broken windows, and broken tiles; that during the period of November 1973 through June 1976, he had observed persons living in this building as tenants and, although some of the building code violations were readily correctable, they had not been remedied on June 21, 1976; and that plaintiff had acknowledged ownership of the building in question. This witness then gave testimony concerning an occupied apartment building at 1064-68 Berwyn, also known as 5301-09 North Winthrop. He stated that his inspection revealed code violations of broken plaster, peeling paint, rats, roaches, a defective

boiler, and a rusted out steel fire escape; that during the course of inspections from 1973 to approximately 1976, the building was never brought into compliance with the building code although the violations were readily correctable; and that plaintiff acknowledged ownership of the building. The third inspection of the witness was on June 9, 1976, of an occupied six-story apartment building located at 832 West Gunnison, concerning which he testified that he found 21 code violations which included broken plaster, peeling paint, garbage, mice and roaches, and defective plumbing; that these violations could easily have been corrected, but later inspections disclosed they had not been; and that plaintiff acknowledged owning the building.

The other code enforcement inspector testifying to an inspection of a 61-unit partially occupied apartment building located at 5726-28 North Winthrop stated that he found 39 building code violations; that plaintiff acknowledged ownership of this building since 1959; that the violations included general exterior neglect, a chimney in a dangerous condition, improper doors, no boiler room door, holes in the boiler room wall, peeling paint, rusted fire escape floors, broken concrete walk, the lack of lights on the fire escape, holes in the clay tile in the basement, holes in the plaster throughout the building, evidence of mice in the building, broken windows, and rotting window sashes; that these violations were not corrected until a receiver was appointed in 1975 and plaintiff was directed by the court to deposit $16,000 for repairs of that building; that the violations at the building could have been repaired rather quickly; and that the receiver achieved 90% compliance with the building code, but the building has since reverted to a state of disrepair.

The Department offered into evidence the pleadings of the city of Chicago and plaintiff in prior proceedings involving alleged building code violations of similar nature in the buildings in question, for the stated purpose of establishing ownership of the buildings and demonstrating notice of alleged violations.

Acting on the Committee's recommendation, the Department revoked plaintiff's real estate broker's license. The circuit court affirmed this decision, and this appeal followed, in which plaintiff contends that section 15 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 115(e)(11), (21)), and Rule XI of the Department Rules and Regulations are unconstitutional; that the complaint did not state a cause of action; that he was erroneously refused a continuance of the hearing; that Department bias denied him a fair hearing; that the Department failed to comply with plaintiff's discovery motion; that Department witnesses gave false testimony; that the hearing was conducted in an unfair manner; that the agency's findings were not supported by substantial evidence; that revocation of his broker's license was arbitrary, erroneous, and constituted cruel and unusual punishment

as well as a denial of due process and equal protection; and that he was prejudiced by the Committee's failure to procure a transcript.

Opinion

■■ Plaintiff first contends that section 15(e)(11), (21) of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 115(e)(11), (21)) (the Act)[1] and Department Rule XI—the authority under which his license was revoked—"are unconstitutional and void, being on its face [*sic*] and in violation of Art. 1, Sec. 2 of the Ill[inois] Constitution and the 14th Amendment, Sec. 1 of the U.S. Constitution, referring to due process and equal protection of the laws." Section 15 provides, in part:

> "The Department may refuse to issue or renew, may suspend or may revoke any certificate of registration, or may censure or reprimand any registrant hereunder for any one or any combination of the following causes:
>
> ✳ ✳ ✳
>
> (e) Where the registrant in performing or attempting to perform or pretending to perform any act as a real estate broker or salesman, or where such registrant, in handling his own property, whether held in deed, option, or otherwise, is found guilty of:
>
> ✳ ✳ ✳
>
> 11. Having demonstrated unworthiness or incompetency to act as a real estate broker or salesman in such manner as to safeguard the interest of the public;
>
> ✳ ✳ ✳
>
> 21. Disregarding or violating any provision of this Act, or the published rules or regulations promulgated by the Department to enforce this Act; ✳ ✳ ✳."

Rule XI of the Department Rules and Regulations states:

> "Unworthiness or incompetence on the part of a registrant as set forth in [section 15(e)(11)] of the Act may consist of both acts and omissions to act. Omissions to act and a failure to safeguard the interests of the public in the buying or selling, the negotiation of sales or exchange of real estate, the leasing or renting of real estate wherein the premises are known by the registrant to be in violation of ordinances made for the protection of the public in regard to fire, health, sanitation and other hazards shall be deemed 'unworthiness or incompetence.'"

In support of this contention, plaintiff argues that the Department's complaint does not specify in detail the municipal code violations; that it fails to allege that he had notice of them; and that, in any event, the

---

[1] Section 15(e)(11), (21), is currently codified at Ill. Rev. Stat. 1979, ch. 111, par. 5732(e)(11), (21).

violations preceded the effective date of the statute under which this action was brought. Because these arguments do not concern constitutionality and were restated by plaintiff in support of other contentions, they will be considered later in this opinion.

Plaintiff does, however, urge a constitutional argument that the adjudication of housing code violations by an administrative body is the improper exercise of a judicial function. We find no merit in this contention.

Except in the case of punishment for crime, due process of law may be afforded by administrative proceedings as well as by the judicial process even though personal or property rights are involved. (*Pipe Trades, Inc. v. Rauch* (1954), 2 Ill. 2d 278, 118 N.E.2d 319; 1 Am. Jur. 2d *Administrative Law* §149 (1962); see also *People ex rel. Radium Dial Co. v. Ryan* (1939), 371 Ill. 597, 21 N.E.2d 749, *appeal dismissed* (1939), 308 U.S. 504, 84 L. Ed. 432, 60 S. Ct. 99.) License revocation is not a criminal prosecution (*In re Damisch* (1967), 38 Ill. 2d 195, 230 N.E.2d 254; *Klafter v. State Board of Examiners of Architects* (1913), 259 Ill. 15, 102 N.E. 193) and is neither a judgment of the illegality of such acts nor the infliction of a punishment for them (see *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198). Thus, our supreme court has held that the revocation of a license is not an exclusively judicial function and therefore may be accomplished through the administrative process. (*People ex rel. Rice v. Wilson Oil Co.* (1936), 364 Ill. 406, 4 N.E.2d 847; *People ex rel. State Board of Health v. Apfelbaum* (1911), 251 Ill. 18, 95 N.E. 995.) In the instant case, since the Department, an administrative agency, has the authority to revoke a professional license, it is axiomatic that the agency may determine whether grounds for revocation exist. Such a determination is not a judgment of illegality but, rather, it concerns the competency of a person to practice the profession. We conclude that section 15 of the Act read together with Department Rule XI does not unconstitutionally delegate judicial power to an administrative agency.

Plaintiff next posits that the complaint did not state a cause of action because (1) he was not reasonably apprised of the charges against him since the Municipal Code violations were not specifically set forth; and (2) there was no allegation that he had notice of the violations.

Concerning the first reason, we note that charges filed before an administrative agency need not be drawn with the precision required of pleadings in judicial actions. (*Guzell v. Civil Service Com.* (1974), 17 Ill. App. 3d 266, 308 N.E.2d 351.) They need only be drawn sufficiently so that the alleged wrong-doer is reasonably apprised of the case against him to intelligently prepare his defense. *Irving's Pharmacy v. Department of Registration & Education* (1979), 75 Ill. App. 3d 652, 394 N.E.2d 627; *Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624.

In the instant case, while specific code provisions were not set forth, the complaint listed in considerable detail the conditions which were allegedly in violation of the code and stated that the charges were brought under section 15 of the Act. It appears clear to us that the complaint reasonably apprised plaintiff of the charges against him.

Concerning this second reason, we note that the failure to allege notice in the complaint is asserted for the first time on appeal and, in view thereof, will not be considered. (See *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 263 N.E.2d 833, *appeal dismissed sub nom. Burton v. American National Bank & Trust Co.* (1971), 401 U.S. 928, 28 L. Ed. 2d 209, 91 S. Ct. 924.) Moreover, it appears that notice was established from the pleadings received in evidence of prior contested court proceedings brought by the city of Chicago against plaintiff. These pleadings alleged that similar conditions in three of the buildings in question were in violation of specific provisions of the Municipal Code of Chicago.

We find no merit in a further supporting argument of plaintiff that the complaint was insufficient because "all of the alleged dates of the violations precede the effective date of the statute of December 15, 1974.[2] The complaint which was sent to plaintiff on January 21, 1977, states that all of the conditions alleged continued in whole or in part up to that date, which of course include a period of more than two years prior thereto. We note also that the Act went into effect October 1, 1973. (See Ill. Rev. Stat. 1973, ch. 114½, pars. 101 through 123.) Thus, the relevant statute and rule were in effect during the time of alleged violations.

We turn then to the contention that the Department was biased against plaintiff to the extent that he was denied a fair hearing. Plaintiff asserts that bias is demonstrated by various press releases issued by the director and chief attorney of the Department. We are unable to determine whether this contention has merit, however, as the press releases are not included in the record and we take cognizance of and consider only those issues which are supported by the record. (*In re Estate of McGaughey* (1978), 60 Ill. App. 3d 150, 376 N.E.2d 259; *Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 350 N.E.2d 242.) He argues also that bias is reflected by the fact that the Committee did not order a transcript of the hearing to review before it recommended revocation of plaintiff's license. However, it is our view that the Committee was not required to do so since it was a relatively short, uncomplicated hearing which conceivably did not require a transcript for review.

Another contention of plaintiff is that the Committee erroneously refused to grant a continuance of the hearing. The record reflects that

---

[2] The statute is not identified, but it appears to be a reference to Rule XI which became effective that date.

plaintiff was initially notified of a hearing to be held on February 22, 1977; that on February 16, he requested and was granted a continuance to April 26, 1977. Because on April 25 he moved to dismiss the complaint and for the production of documents and the names of potential witnesses, the hearing was reset for June 14 at 9:30 a.m. On that date, the hearing began at 10:30 a.m. and proceeded *ex parte* in the absence of plaintiff, who arrived about 15 minutes after the conclusion of the hearing. Plaintiff asserts that he mailed a motion for a continuance on June 8 and, when he arrived at about 12:30 p.m. on June 14 to get the new date, he was told that the hearing was concluded. He made a request at that time to be heard, which was denied. It appears that the Committee did not receive plaintiff's letter until the day after the hearing.

An administrative agency possesses broad discretion as to whether it will allow a motion for a continuance (*Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754; *Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 347 N.E.2d 270), but it is a discretion which must be exercised judicially and not arbitrarily (*Brown v. Air Pollution Control Board*; *Ullmen v. Department of Registration & Education* (1978), 67 Ill. App. 3d 519, 385 N.E.2d 58).

■■ Here, it appears undisputed that the Committee did not receive plaintiff's request for a continuance until the day after the hearing had concluded, and it is obvious that a denial at that time, if in fact there was such, could not be an abuse of discretion.

Plaintiff, however, argues "the refusal to grant plaintiff a hearing on June 14, 1977, before any order was entered and when he arrived but 10 to 15 minutes after the conclusion thereof, amounted to a violation of due process and equal protection of the law as guaranteed by the Constitution."

■■ In support of his due process position, plaintiff repeats other arguments which we have already considered and rejected; namely, that the complaint did not reasonably apprise him of the charges so that he could properly prepare his defense; that the complaint does not allege that he had knowledge of any of the conditions charged as violations; and that he was denied a fair hearing because the Committee was biased against him. Neither do we otherwise find any constitutional infringement in the denial of his request for a hearing upon his late arrival. So far as the record is concerned, the Committee conducted the hearing on the scheduled date with adequate notice to plaintiff, who did not appear. Indeed, it was at the request of plaintiff that the hearing had been continued from February 22 to the June 14 date. It was set for 9:30 a.m. and was apparently delayed one hour. The Committee, not having heard from plaintiff by 10:30 a.m., did not err in proceeding *ex parte*. Furthermore, the record does not disclose by offer of proof or otherwise

the evidence plaintiff might have offered at that time or presented at a later time if a continuance had been requested and granted. In the absence thereof, no prejudice is apparent. Under these circumstances, we find no due process violation and, as plaintiff makes no argument in support of an equal protection violation, we will not consider it.

■■ Plaintiff next contends that the Department's findings were not supported by the evidence. While the findings of an administrative agency are deemed to be prima facie correct (Ill. Rev. Stat. 1975, ch. 110, par. 274; *Lavin v. Civil Service Com.* (1974), 18 Ill. App. 3d 982, 310 N.E.2d 858), it is equally true that they must be supported by substantial evidence (*Menning v. Department of Registration & Education* (1958), 14 Ill. 2d 553, 153 N.E.2d 52; see also *Shallow v. Police Board* (1978), 60 Ill. App. 3d 113, 376 N.E.2d 1025). As more succinctly stated, an agency decision will not be disturbed unless an opposite conclusion is "clearly evident" from the evidence. *Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, 40, 360 N.E.2d 536, 542; *Wolbach v. Zoning Board of Appeals* (1967), 82 Ill. App. 2d 288, 296, 226 N.E.2d 679, 683.

In the instant case, two code enforcement inspectors testified that plaintiff acknowledged ownership of the apartment buildings located at 5621-25 North Winthrop, 832 West Gunnison, 5301-09 North Winthrop, and 5727-28 North Winthrop. One also detailed numerous defective conditions in three of the buildings in question. The other detailed numerous defective conditions existing at one of those buildings. The Committee concluded that some of these conditions existed in the buildings until at least the end of 1976.

Plaintiff is correct in his statement that some of the Committee's findings of defective conditions appear to be unsupported by the evidence. We believe, however, that there is substantial evidence to support many of the conditions found to be existent and, while we do not condone the imprecise draftsmanship reflected in the findings of fact, we find that a conclusion opposite to the decision of the Department is not clearly evident from the evidence.

We next turn to plaintiff's contention that he was prejudiced by the Department's failure to disclose evidence in its possession which might have been helpful to him. The record reveals that plaintiff sought prehearing discovery, among other things, of the names and addresses of persons who complained to the Department against plaintiff, and of information concerning participation by Department agents and employees in the news media concerning plaintiff and this revocation process. The Department refused the first request on the grounds of breach of confidentiality and irrelevancy. It denied the second request because it was too vague, was irrelevant, and called for documents not within the Department's control.

In *Wegmann v. Department of Registration & Education* (1978), 61 Ill. App. 3d 352, 356, 377 N.E.2d 1297, 1301, we stated:

> "The purpose of pretrial discovery is to aid the party in preparation and presentation of his case or defense, assuring the truth and to eliminate as far as possible surprise, so that judgments will rest upon the merits and not upon skillful maneuvering of counsel. [Citations.] Presumably, the need for discovery at the administrative level is the same, so as to require disclosure by the agency of evidence in its possession which might be helpful to an accused. [Citations.] While an administrative body possesses broad discretion in conducting its hearings, its discretion must be exercised judicially and not arbitrarily. [Citations.]"

We take judicial notice of Rule 10.01 of the Department Rules of Practice in Administrative Hearings, which appears to be its only discovery rule:

> "After initiation of a complaint, any party, upon written request made to the other party, at least three (3) business days prior to the hearing and within ten (10) days after service of the initial pleading, or within five (5) days after such service of an additional pleading, shall be entitled to (1) obtain the names and addresses of witnesses whom the other party intends to call to testify at the hearing, and (2) obtain a list of all writings and documents which the party proposes to offer in evidence."

■■ Here, the Department provided plaintiff with the names and addresses of witnesses it intended to call as well as a list of the documents it proposed to introduce. The Department's refusal to disclose information regarding the persons who made complaints against him and concerning Department employees and news media activities was clearly irrelevant.

Plaintiff next appears to contend that the administrative hearing was conducted to establish his guilt rather than arriving at facts, and thus was contrary to the established rule that a hearing before an administrative agency should never be a partisan process with an agency on one side arrayed against the individual on the other. *Lakeland Construction Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 1036, 379 N.E.2d 859; *Gigger v. Board of Fire & Police Commissioners* (1959), 23 Ill. App. 2d 433, 163 N.E.2d 541.

He argues that counsel for the Department misled the Committee to a belief that the allegations in the prior housing court complaints against him, which were introduced at the hearing, had been adjudicated by a court as such. We stated above that in those prior complaints brought by the City of Chicago many of the same conditions in the same buildings were alleged to be in violation of specific provisions of the Municipal Code and, while some references were made by defendants' counsel to

orders entered in those proceedings, we do not see those comments as being misleading. This is particularly so because the Department also introduced in evidence petitions filed by plaintiff in those prior proceedings to vacate the orders entered. Thus, having been informed by plaintiff as to the content of those orders, it is not reasonable to believe the Committee was misled by the references to them by defendants' counsel.

Plaintiff next argues that defendants' witnesses testified falsely at the hearing. To support this argument, he refers to certain pages of the record and concludes they contain false testimony. However, he points to no specific statements and makes no effort to demonstrate the untruth of any testimony on those pages or elsewhere in the record. In view thereof, we reject this argument.

We reach then plaintiff's contention that the revocation of his broker's license violated the eighth amendment, as well as the due process and equal protection clauses of the United States Constitution.

His eighth-amendment argument centers in his belief that a revocation of a license is penal in nature and constitutes cruel and unusual punishment.

The United States Supreme Court in *Ingraham v. Wright* (1977), 430 U.S. 651, 664, 51 L. Ed. 2d 711, 725, 97 S. Ct. 1401, 1408-09, stated:

> "The Eighth Amendment provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' Bail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government. An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes. We adhere to this longstanding limitation * * *." (See Note, *The Eighth Amendment and Procedural Due Process as Restraints on the Administration of Corporal Punishment in Public Schools*, 26 DePaul L. Rev. 121, 123-28 (1976).)

This court, in *Saleson v. Department of Registration & Education* (1968), 95 Ill. App. 2d 104, 115, 237 N.E.2d 822, 827, in rejecting an argument similar to that raised by plaintiff here, stated:

> "We do not agree with plaintiff that 'a proceeding to revoke a license to practice a trade or profession causing the deprivation of an opportunity to earn a livelihood through such trade or profession is a "criminal case." ' "

Thus, revocation of a professional license is not a criminal sanction and the eighth amendment has no application here.

Plaintiff suggests also that his license was revoked "arbitrarily and unreasonably or in clear violation of an established rule of law." In support, he makes only a general statement in his brief that of 11 revocation hearings of the Department based upon the grounds of "unworthiness and incompetence" and "disregarding or violating the Act or Rules," only the instant one did not arise out of a real estate transaction.

Initially, we note that we are unable to determine the significance, if any, of this argument since there is nothing in the record concerning the 11 hearings and plaintiff's brief contains no information in that regard other than the above general statement. Furthermore, we note that section 15(e) of the Act applies not only to a registrant acting as a real estate broker or salesman but also where a registrant, in handling his own property, is found guilty of unworthiness and incompetence (section 15(e)(11)) or disregards or violates any provision of the Act (section 15(e)(21)). Here, plaintiff was such a registrant, handling his own property and, in any event, we view the rental of residential units to be real estate transactions.

We see no merit in an additional contention of plaintiff that the Department lacked the authority to revoke his license because, effective October 1, 1977, section 15 of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 5732) was amended to include "censure or reprimand" as sanctions, where prior thereto the Department could only refuse to issue or renew, suspend or revoke a certificate of registration.

■■ Pointing out that the amendment was after the June hearing in question but prior to the entry of the Department's order of revocation in late October 1976, plaintiff argues that the Department lost the authority to revoke his license. He argues that under the rules of statutory construction, there is a presumption "that an amendment to a law changes that law." While it is true that in amending a statute the General Assembly intended to make some change in the existing law (see *Goedde v. Community Unit School District No. 7* (1959), 21 Ill. App. 2d 79, 157 N.E.2d 266), an amendatory act is to be construed as continuing in effect the unchanged portions of the original act (*Gaither v. Lager* (1954), 2 Ill. 2d 293, 118 N.E.2d 4). Here, the legislature's addition of two actions the Department could take in a disciplinary proceeding does not alter its power to revoke a registrant's license, since the specific language granting such authority was not altered by the amendment.

Plaintiff takes the additional position that the Department's order was erroneous because of the Committee's failure to procure a transcript of the hearing prior to making its recommendation of revocation. Plaintiff took this same position in support of his contention that the Committee was biased, and we found above that there was no requirement that such a transcript be obtained. Adhering to that conclusion, we find no error

resulted from the fact that a transcript was not obtained before the Committee made its recommendation.

In view of the foregoing, we affirm the Department's decision and the order of the trial court.

Affirmed.

MEJDA and WILSON, JJ., concur.