(No. 34835.—

CARL MENNING, Appellant, *vs.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Appellees.

*Opinion filed September 18, 1958.*

554

CHARLES D. SNEWIND, of Chicago, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, and THEODORE G. MAHERAS, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Appellant, Carl Menning, appeals from a judgment of the superior court of Cook County which affirmed an order of the Director of the Department of Registration and Education that his license to practice dentistry in this State be revoked for unprofessional conduct. We have jurisdiction on direct appeal by virtue of section 7—h of the Dental Practice Act. Ill. Rev. Stat. 1957, chap. 91, par. 62h.

Facts appearing in appellant's testimony in the cause reveal that he was licensed to practice dentistry in 1927, that he has resided continuously at the same Chicago address since being licensed, and that he devoted full time to the general practice of dentistry in that city or its suburbs until interrupted by a serious illness in 1950 and 1951. Following his illness he resumed practice on a part-time basis, his physician having advised against long hours, and, early in 1952, he located at 2936 South Cicero Avenue, some four miles from his last previous location. He made no announcement of his new location to patients or in professional journals, his explanation being that he did not do so because his physical condition permitted only a limited practice. His office at the Cicero Avenue address was situated on the ground floor and he shared the location with James E. Cantwell who there operated a dental laboratory. As the premises were entered from the street there was a waiting room and a separate rear room in which was located the usual work benches and equipment of a dental laboratory. The waiting room itself was divided further by a partition which separated it from a small dental office

which was equipped with a chair unit and a sterilizing cabinet. Appellant, who related that he had sought out the location, rented both the dental office space and the equipment from Cantwell under an oral lease and it was his testimony that his rental depended upon the amount of business he would do and what he could afford, that it was never figured on a percentage basis, and that Cantwell was usually satisfied with payments of $25 to $30 a month. He continued to practice at this location, working only a few hours daily, until a date, apparently in March, 1954, when a man named Mendel took over the operation of the dental laboratory from Cantwell.

On June 25, 1954, a complaint against appellant was filed with the Department of Registration and Education by Edgar T. Stephens, secretary of the legislative and law enforcement committee of the Chicago Dental Society. The substance of the complaint was that appellant was guilty of improper and unprofessional conduct on and prior to February 26, 1954, in that he aided and abetted Cantwell in the illegal practice of dentistry, that he performed serv- ices for and used the services of a person [Cantwell] in violation of the Dental Practice Act, that he split fees with Cantwell in return for the referral of patients, that he un- lawfully advertised and solicited business through Cantwell, and in that he failed to notify the department of his change of address. A second count charged him with having com- mitted similar acts of unprofessional conduct on March 1, 1954, by his association with Cantwell's successor. Appel- lant filed no answer to the complaint and, although advised of his right to counsel, appeared and submitted to a hearing before the Board of Dental Examiners, consisting of five dentists appointed by the Department, without assistance of any kind. As was customary, the board permitted the hearing to be conducted by the attorney representing the complaining dental society, assisted by counsel for the De- partment. The only witness to appear against appellant

was a private detective who revealed that he had been employed to investigate the business at Cicero Avenue by the attorney who conducted the hearing. Some of these features of the hearing and appellant's manifest inexperience in conducting cross-examination, together with allegations on rehearing that appellant was induced to appear and testify by assurances from the society's counsel that he had nothing to worry about, are the basis of a contention that appellant was denied the fair and impartial hearing contemplated in constitutional guarantees of due process of law. While it is our opinion that such contention is not entirely without merit, our view of the evidence in the case renders it unnecessary to fully explore it.

At the conclusion of its hearing the board made certain findings of fact and concluded that appellant had advertised and solicited business through Cantwell in violation of paragraph 17 of section 7 of the Dental Practice Act; that he had professional connection with Cantwell in that he used the facilities and equipment of Cantwell and paid for the same an amount of money based on dental patronage obtained on the premises and referred to appellant by Cantwell, thus violating paragraph 5 of section 7 of the act; and that appellant took impressions of the mouths of people who had gone to Cantwell to have plates made and were referred to appellant by Cantwell in violation of paragraph 16 of section 7. (See: Ill. Rev. Stat. 1953, chap. 91, pars. 62(17), (5) and (16).) No findings were made with respect to count 2 of the complaint, or as to the charges of count 1 that appellant had failed to notify the department of his change of address, and that he had aided and abetted Cantwell in the illegal practice of dentistry. Inasmuch as the charges against appellant were so interwoven with the conduct of Cantwell, we deem it important to note disclosures of the record that charges of illegally practicing dentistry had been filed against Cantwell in the superior court of Cook County and that, at the time of appellant's

hearing, the cause had progressed to a point where the court had under consideration objections to the findings of a master that Cantwell had not practiced dentistry in violation of the Dental Practice Act.

From its findings the board concluded that appellant had been guilty of improper, unprofessional and dishonorable conduct and recommended the revocation of his license. The Department ordered such revocation, after adopting the findings of the board and denying rehearing, and the superior court, upon proceedings for administrative review initiated by appellant, affirmed the order of the Department. This appeal has followed with appellant's principal contentions being that the evidence does not justify the revocation of his license, and that the findings of the board, and the order predicated thereon, are against the manifest weight of the evidence.

Although the findings of an administrative agency are deemed to be *prima facie* true and correct, (*Parker* v. *Dept. of Registration and Education,* 5 Ill.2d 288; Ill. Rev. Stat. 1955, chap. 110, par. 274,) and although the provisions of the Administrative Review Act have been construed to mean that courts are not authorized to reweigh evidence or to make an independent determination of facts, (*Secaur* v. *State Civil Service Com.,* 408 Ill. 197,) it is equally true that the findings of an administrative agency and the order predicated thereon must rest upon competent evidence (*Novicki* v. *Dept. of Finance,* 373 Ill. 342,) and be supported by substantial evidence. (*Wallace* v. *Annunzio,* 411 Ill. 172). Upon judicial review, in other words, this court has the power to review all questions of law and fact presented by the record, our judicial function being comparable to the issue at law as to whether there is competent and substantial evidence to support a judgment of the lower court. (*Harrison* v. *Civil Service Com.,* 1 Ill.2d 137.) Upon the basis of these guiding principles it is our opinion

that the findings of the board in this case are not supported by substantial evidence nor, in some instances, by competent evidence.

Paragraph 17 of section 7 of the Dental Practice Act, the section which fixes the offenses for which a license to practice dentistry may be refused, suspended or revoked (Ill. Rev. Stat. 1953, chap. 91, par. 62) defines one offense as follows: "Except as otherwise provided in Section 18b, advertising or soliciting by himself or through another by means of hand bills, posters, circulars, stereoptician slides, motion pictures, radio, newspapers or in any other manner for professional business." Section 18b referred to (Ill. Rev. Stat. 1953, chap. 91, par. 72b) regulates advertising relating to the practice of dentistry and provides in part that it shall be unlawful to use or exhibit specimens of dental work, posters or any other media of calling attention of the public to any person engaged in the practice of dentistry. The section does, however, permit the use of window signs consisting of the name, title and degree of a dentist, provided the lettering is no more than seven inches in height and that no glaring or illuminated signs are used.

As a preface to its finding that appellant had violated paragraph 17 of section 7 by advertising and soliciting business through Cantwell, the board made but two factual findings having reference to advertising. They were, first, that two plate glass windows at the front of the Cicero Avenue premises were unprinted except for the word "Dentist" appearing in large letters on each, and, second, that the windows contained a display of specimen human dentures and a large neon sign in pictured outline of a human upper denture with the words: "Dental Plates— Manufactured—Repaired." There is neither proof nor finding that the letters announcing appellant's title exceeded the seven-inch limit fixed by the regulatory statute, thus the conclusion that he advertised and solicited business

through Cantwell must find its support in the proof upon which the finding relative to the use of neon signs and specimen dentures was based.

The sole proof of the complainant was in the form of two photographs, attached to the complaint, which portrayed the premises, neon sign and specimen dentures in question. Although the complainant, Stephens, was present at the hearing, such photographs were never formally introduced into evidence, nor were they qualified in any manner. When shown to appellant he testified that such means of advertising had not been employed while he had occupied the premises and that they had been put up by Mendel, Cantwell's successor, after appellant had finished his work and quit the location. This testimony was not refuted even though a detective who had visited the premises four or five times during appellant's occupancy was called as a witness, nor was there any effort on the part of complainant to establish that the photographs were in fact taken while appellant was practicing his profession on the premises. It is true, as appellees suggest, that the Administrative Review Act provides that the "failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision." (Ill. Rev. Stat. 1955, chap. 110, par. 275(2).) In this case, however, the board's failure to require some foundation or qualification for the photographs, particularly in view of the appellant's unrebutted testimony, resulted in a manifest injustice to him. We conclude that there is neither competent nor substantial evidence to support the conclusion that appellant advertised and solicited business through Cantwell in the manner found.

In reaching our conclusion we are not unaware that the complaint charged that Cantwell had unlawfully advertised his business in a business directory and a newspaper, and that appellant had accepted the benefits of such advertising. The board, however, made no findings with respect to such

charges, thus the issues they raise are not before us for review. On review, this court will not make an independent investigation of the evidence to develop new facts not found by the administrative agency. *Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com.* 397 Ill. 406.

Division of fees or agreeing to split or divide fees received for dental services with any person for bringing or referring a patient, without the knowledge of such patient, is made an offense which warrants revocation of a license by paragraph 5 of section 7 of the Dental Practice Act, (Ill. Rev. Stat. 1953, chap. 91, par. 62,) and it was the conclusion of the board that appellant was guilty of this practice in that he "used the equipment and facilities of James E. Cantwell and paid for the use of the same an amount of money based on dental patronage obtained on the premises and referred to him by said James E. Cantwell." There is no direct proof that Cantwell and appellant operated on a fee-sharing basis, and appellant expressly denied it, nor is there positive evidence that Cantwell ever referred patients to appellant. The question thus becomes one of whether or not there is a rational basis in the evidence for the conclusion reached by the board. While an administrative agency has within its province to draw reasonable conclusions and inferences from evidentiary facts, (*Jefferson Ice Co.* v. *Industrial Com.,* 404 Ill. 290,) this court is not bound to believe that facts in evidence establish a conclusion if the conclusion is not reasonable, (*Illinois Central Railroad Co.* v. *Commerce Com.,* 395 Ill. 303,) and we may set aside the administrative findings if manifestly against the weight of the evidence. (*Electro-Motive Division, General Motors Corp.* v. *Industrial Com.* 411 Ill. 132.) Appellant testified that he leased both his equipment and space from Cantwell and that his rental depended on how much business he could do and what he could afford. Elaborating upon this he stated that he gave Cantwell whatever he could to satisfy him, usually

about $25 a month. His further testimony was that the rental was never figured on a percentage basis and that he never shared his fees with Cantwell. As for his clientele, he related that it consisted of people who knew he was there, of referred business by people he did work for, and of people from the neighborhood. He stated that while it could have been possible that Cantwell referred patients to him, he could not recall that such had ever been the case.

The only other evidence having any bearing on the question of fee-splitting was the testimony of Eugene A. Anderson, a Pinkerton detective employed by the dental society "to make calls at a Dental Laboratory located at 2326 South Cicero Avenue." This witness related that he first visited the premises at 12:15 P.M. on February 20, 1954, at which time he conversed with Cantwell who told him the doctor was out and would return in the afternoon. He stated that he told Cantwell he wanted to have an upper plate made to replace one he had lost on a train and that nothing was said about the price. Anderson returned at 3:15 P.M. at which time appellant fixed a price of $85 for a plate, made an impression, collected a $10 down payment, . and made another appointment for February 26. On the 26th Anderson was informed by Cantwell that appellant had no appointments for the day, that something was wrong with the plate, and that he should return the following day. When the witness returned as directed appellant fitted the plate and, when it was found to hurt, advised Anderson that more work was necessary and that he should return March 3. On this occasion Anderson paid appellant an additional $20 at the latter's request, and when he represented he wanted a receipt to show his wife, was given a duplicate of a payment card record maintained by appellant. When Anderson returned on March 3 appellant inserted the plate and received a $55 check in payment of the balance due. There is dispute in the evidence as to whether appellant requested Anderson to make the check payable to him-

self but, in any event, the check was introduced in evidence and bore the endorsements of Anderson, appellant and Cantwell, in that order. When questioned by the board about the transaction appellant testified he vaguely remembered treating Anderson, that he remembered receiving the check, but that he could not remember what had happened to the check.

It is our opinion that the foregoing evidence fails to either establish or reasonably afford a basis for the conclusion that appellant and Cantwell operated on a fee-sharing basis, or that appellant's obligation to Cantwell was based on the amount of patronage referred to him by Cantwell. The only positive evidence in the record is appellant's testimony that he rented from Cantwell, paid what monthly rent he could afford, and conducted his practice entirely free from agreement, direction or control by Cantwell. He was corroborated to a certain degree by Anderson's testimony that he discussed prices only with appellant, and that records of payments were maintained by appellant. Similarly there is no direct proof that Cantwell ever referred a patient to appellant, let alone proof that he did so with an understanding that he would receive a part of the fee. Anderson did not testify that he had been referred to appellant by Cantwell, and appellees neither suggest, nor do we see, how the circumstances relating to Anderson's check lead to a reasonable conclusion that the fee he paid was being shared. Section 5a of the Dental Practice Act, (Ill. Rev. Stat. 1953, chap. 91, par. 60a,) permits licensed dentists to employ the services of any person, firm or corporation to construct dentures and it is admitted here that Cantwell performed such services for appellant. This, together with the fact that Cantwell was the appellant's landlord, does not make it unreasonable that Cantwell would come into possession of a check received by appellant. Considering the meager and speculative nature of the evidence in the record, it is our opinion that the

board's conclusion that fees were split in return for referrals by Cantwell is not supported by the record.

The final finding of the board was that appellant "took impressions of the mouths of patients at the request of James Cantwell, said patients having gone into said laboratory to have plates made by said James Cantwell and who were referred to respondent by said James Cantwell." On this basis the board concluded appellant had violated paragraph 16 of section 7 of the Dental Practice Act which provides that a license to practice dentistry may be revoked for: "Taking impressions for or using the services of any person, firm or corporation violating any of the provisions of Section 5a." The latter section, the purpose of which is to regulate the manufacture of dentures, bridges or replacements for licensed dentists, provides that licensed dentists may employ or engage the services of any person, firm or corporation to construct or repair dentures, and that when such person or firm does such work directly and solely for a licensed dentist, "and not for the public or any part thereof," they shall not be deemed or considered to be practicing dentistry. (See: Ill. Rev. Stat. 1953, chap. 91, par. 60a.) In other words, the purport of the section is that when a dental appliance manufacturer makes dentures directly for the public, and not for a licensed dentist, such manufacturer is unlawfully practicing dentistry. (Cf. *Winner* v. *Kadow*, 373 Ill. 192.) Although not clearly spelled out, we interpret the finding of the board in this case to be that Cantwell violated section 5a by making dentures directly for the public, and that appellant was guilty of an offense in taking impressions for Cantwell. Neither finding is sustained by the record.

Again, the only positive and direct evidence in the record with regard to the taking of impressions is found in the testimony of appellant who stated: "I only took impressions for the patients that I did work for, and only for those that came in to me and wanted dental work." No

refutation of this testimony appears in the record, and to overcome it appellees argue that appellant's testimony that it was possible Cantwell had referred patients to him is proof that he took impressions at the request of Cantwell. We are unwilling, however, to destroy appellant's professional carer on so nebulous a premise. Unless it can be said that detective Anderson's testimony is susceptible to such an interpretation, there is not a scintilla of proof to support the finding that appellant took impressions at the request of Cantwell. The rationale of his testimony was, rather, that Cantwell told him he would have to return later and discuss the work and terms with appellant, which he did, thus affording no basis for a finding that Anderson's impression was taken at the request of Cantwell.

Furthermore, it is our opinion that Anderson's testimony fails to establish that Cantwell was performing his services directly for the public in violation of section 5a. He did not at any time testify that he bargained or dealt with Cantwell, and such conclusion is arrived at only by inference from his statement that he told Cantwell he wanted a plate made to replace one he lost. The fact remains that Cantwell told him he would have to return and deal with appellant, and when we consider the purpose of his visit, which was made at an hour of the day when professional persons are normally absent from their offices, we are not prepared to say that his statements to Cantwell establish wrongful conduct on the part of either Cantwell or the appellant. To attach any greater significance to his act of appearing in the combined office and telling the only person present that he wanted a plate made, would amount to an indirect entrapment of appellant that cannot be countenanced in the law. We again conclude that the evidence in the record utterly fails to sustain this finding and conclusion of the board.

It is well to repeat here the observation in *Kalman* v. *Walsh*, 355 Ill. 341, that revocation of the license of a pro-

566

fessional man to practice his chosen profession carries with it not only disgrace and humiliation but deprives him of his means of livelihood. From a consideration of all the facts established by the evidence, no substantial evidence is found in this record which justifies the drastic action taken or which supports either the findings and conclusions of the board, or the order revoking appellant's license.

The judgment of the superior court is reversed and the cause is remanded to that court, with directions to set aside the administrative order.

*Reversed and remanded, with directions.*