JAMES M. CUSACK, Plaintiff-Appellant, v. JIM EDGAR, Secretary of State, Defendant-Appellee.

First District (1st Division)   No. 85—0937

Opinion filed October 15, 1985.

Lonny Ben Ogus, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Steward, Solicitor General, and Thomas P. Marnell, Assistant Attorney General, both of Chicago, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff, James Cusack, filed a petition with defendant, the Secretary of State, requesting a restricted driving permit (hereinafter permit) subsequent to the suspension of his driving privileges for driving while under the influence of alcohol. After a hearing, defendant denied plaintiff's request. Thereafter, plaintiff filed a complaint for administrative review, again seeking a permit. After a hearing, the trial court dismissed plaintiff's complaint. Plaintiff appeals, contending that defendant's denial of his request for a permit was contrary to the manifest weight of the evidence, was arbitrary and capricious and was also erroneous.

The record on appeal discloses that plaintiff was convicted of driving while under the influence of alcohol on May 24, 1983, as a result of his arrest for the same offense on April 28, 1982, in Sangamon County. Following that conviction, plaintiff's license was revoked on June 9, 1983, pursuant to section 6—205(a)(2) of the Illinois Vehicle Code. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—205(a)(2).) Plaintiff then applied for the permit on May 18, 1984, and a formal hearing was held regarding his application on June 21, 1984. At that hearing, plaintiff's driving record was introduced into evidence. It consisted of the following convictions:

1. A conviction was entered on October 1, 1973, for speeding;

2. A conviction was entered on April 15, 1974, for lane violations;

3. From April 12, 1974, until July 12, 1974, plaintiff's license was suspended after an incident involving implied consent;

4. A conviction was entered on May 10, 1975, for disregarding a stop sign;

5. A conviction was entered on November 18, 1975, for failing to drive on the right side of the road;

6. A Florida conviction was entered on July 22, 1980, for driving while under the influence of alcohol;

7. From September 8, 1980, until July 8, 1981, plaintiff's license was suspended pursuant to section 6—206(a)(6) of the Illinois Vehicle Code;

8. A conviction was entered on October 2, 1980, for speeding;

9. The aforesaid conviction for driving while under the influence of alcohol in Sangamon County was entered on May 24, 1983.

Plaintiff testified that on April 28, 1982, he had been working at his mother's home and had been drinking beer. Subsequently, he drove out for supplies and later stopped at a tavern where he had "one or two beers." Plaintiff stated:

"On the way back I stopped at a tavern, for a beer again, that I had never been in before. I was there and I can't remember if I had one or two beers, but I was there briefly. Then as I left the place a car followed me about two blocks from the parking lot. The fellow flashed his lights, his headlights off and on. I pulled over and asked him what was the matter. He said that I had scraped his fender pulling out of the parking lot, and I said I didn't notice I did that, but if I did I would take care of it. We looked at the car and there was no apparent damage, there was none to mine. He asked me to wait there for the police and I agreed, so I stood alongside of the road for over half an hour. The police finally came, no ticket was issued for me or him. There were no tickets or anything, but the police asked me if I would take a breathalyzer test and I agreed to it and I failed the test and that's generally what happened."

Plaintiff then stated that he pleaded guilty to driving while under the influence of alcohol.

Concerning his 1980 Florida conviction for drunken driving, plaintiff admitted that just prior to the collision, he had been drinking at a tavern owned by a friend. He then left that location in order to proceed to his in-laws' house. As he went down a divided four-lane highway, a car pulled up behind him and stayed within less than a car length behind him for more than a mile and a half. Every time plain-

tiff speeded up, that individual followed him, in effect playing "bumper tag." However, a red light then flashed at an upcoming intersection and in response plaintiff applied his brakes. The following car then crashed into the rear end of plaintiff's vehicle. Plaintiff stated:

> "The whole car was like an accordian. I got out of the car and attempted to try to push it from the roadway off to the side of the road and the fellow started an argument with me, and the next thing I know I got slugged in front of the people and knocked out. The police came and they asked me to take the breath test and I was barely awake and I just didn't want to."

Although plaintiff refused to take the breathalyzer test, he later pleaded guilty to drunken driving.

Finally, plaintiff explained that on December 8, 1973, he was stopped for improper lane usage. However, he admitted that he had been drinking at that time. On that occasion, plaintiff also refused to take a breathalyzer test. Subsequently, he was convicted for improper lane usage and an implied consent suspension of his driving privileges was entered since he had refused to take the breathalyzer test.

Plaintiff further stated that he began drinking with regularity in 1971, consuming four to six cans of beer on the weekends. Plaintiff also admitted that on one occasion he had consumed up to 12 cans of beer. However, in 1977, his drinking habits moderated to drinking one night per month, and he perceived himself to be a social drinker. According to plaintiff, he again started drinking heavily in 1982, resulting in his intoxication once or twice a month. Plaintiff maintained, however, that by July 1983, he had stopped drinking completely.

Pursuant to the defendant's rules, plaintiff submitted to an alcohol evaluation which concluded that "at this time Mr. Cusack is not drinking alcohol and has no intention of starting again. He seems a low risk for further problems with drinking and driving. No further recommendations are made at this time."

Plaintiff's wife testified on his behalf and stated that she had not seen plaintiff drink since July 4, 1983. Plaintiff's friend, Louis Sarrone, testified that plaintiff's last drink took place on July 4, 1983. However, prior to that date, Sarrone indicated that he had seen plaintiff intoxicated approximately three times in a 12-month period.

On the issue of hardship, plaintiff maintained that he was a relief truck driver who worked through his union but has not been employed in that position since his license was revoked. Plaintiff submitted a letter from his union requesting that his license be restored so that he could continue to work as a truck driver. An additional letter

was submitted from Block & Son, Inc., which indicated that defendant would receive future employment pending restoration of his driving privileges.

On September 14, 1984, plaintiff's application for a restricted driving permit was denied. The defendant concluded in part that:

"(2) The evidence established that the Petitioner has abused alcohol in the past, and that his drinking habits have caused specific, identifiable problems. (3) The Petitioner failed to provide evidence sufficient to carry his burden of proving his alcohol/drug problem has been resolved."

On October 12, 1984, plaintiff filed his complaint for administrative review. After a hearing on March 6, 1985, the trial court affirmed defendant's decision because it was not against the manifest weight of the evidence.

As stated above, plaintiff contends that the circuit court erred when it affirmed the defendant's administrative decision to deny him a permit.

■■ ■ The findings and conclusions of an administrative agency on questions of fact are to be considered *prima facie* true and correct. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) Consequently, courts of review should not reweigh the evidence and determine what is the preponderance of the evidence. (See *Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 76, 426 N.E.2d 877.) However, the findings of the defendant must rest upon competent evidence and be supported by substantial proof. (*Menning v. Department of Registration & Education* (1958), 14 Ill. 2d 553, 558, 153 N.E.2d 52.) Accordingly, the decision of an administrative agency should be set aside only if it is contrary to the manifest weight of the evidence. *Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 76, 426 N.E.2d 877.

■ Section 6—205(c) of the Illinois Vehicle Code sets forth the procedures for granting a permit. That section provides:

"[T]he Secretary of State in his discretion *** may, if application is made therefor, issue to such person [a person whose license has been revoked] a restricted driving permit granting the privilege of driving a motor vehicle between his residence and his place of employment or within other proper limits, except that this discretion shall be limited to cases where undue hardship would result from a failure to issue such restricted driving permit." (Ill. Rev. Stat. 1983, ch. 95½, par. 6—205(c).)

Accordingly, no legitimate claim of entitlement to a restricted driving permit is created by this statute. See *Rehbock v. Dixon* (N.D. Ill.

1978), 458 F. Supp. 1056, 1061.

■ As indicated above, the defendant has discretion to issue a permit only in cases where undue hardship will result. However, that statutory provision does not require defendant to issue the permit merely upon the showing of undue hardship. The language of the statute is permissive only and not mandatory. (See *Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 192-93, 441 N.E.2d 1267.) Moreover, the defendant must exercise his discretion based upon the public interest. This means that defendant should not issue such a permit unless it has determined that the granting of the permit would not endanger the public safety or welfare. *Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 441 N.E.2d 1267.

Section 1001.410 of title 92 of the Illinois Administrative Code, chapter II, defines "undue hardship" as:

> "[A] difficulty in regard to getting to and from an applicant's place of employment or to operate on a route during employment, e.g. as delivery man, because of the suspension or revocation of the applicant's driver's license. It is more than mere inconvenience on the applicant, and pertains only to the applicant. All other reasonable means of transportation must be unavailable to the applicant. An undue hardship is not shown by the mere fact that the driver's license is suspended or revoked."

■ As indicated above, defendant based its denial of a permit not on a lack of hardship but because defendant was not satisfied that plaintiff, if issued such a permit, would not threaten the public safety and welfare. We believe it reasonable to conclude that plaintiff has experienced serious hardship due to his inability to drive since his profession involves driving a truck. However, we feel that defendant properly determined that this hardship was outweighed by the risk posed to the public safety by plaintiff.

Plaintiff's driving record demonstrates his total disregard for traffic laws and traffic safety. In a 10-year period, plaintiff was convicted of seven traffic offenses, including two drunken driving convictions, one in 1980 and the other in 1983. From September 1980 to July 1981, plaintiff's license was suspended as a result of his drunken driving conviction in the State of Florida. Less than one year later, on April 18, 1982, plaintiff was again arrested for driving while under the influence. Apparently, both these arrests followed accidents. In addition to these convictions, plaintiff's license was suspended in 1974 after an incident involving defendant's refusal to take a breathalyzer test. In the administrative hearing, plaintiff admitted that he had

been drinking on that particular occasion and had indeed refused to submit to such a breathalyzer test. We are of the opinion that on the basis of plaintiff's driving record alone, there was substantial evidence to deny plaintiff a permit. We feel that the issuance to plaintiff of such permit a little more than year after his last drunken driving conviction would deprecate the seriousness of plaintiff's poor driving record and would impose a significant risk to the public.

■ Section 1001.440 of title 92 of the Illinois Administrative Code, chapter II, also provides that in all applications for reinstatement or permits, applicants must submit an alcohol or drug evaluation as evidence of completion of an alcohol or drug-related driver remedial course. This section further states:

"The alcohol or drug evaluation must contain at least a report of objective testing of the applicant, a history of the applicant's use of alcohol and present status of an applicant's relationship to alcohol, periods of abstinence, prognosis, and recommendation for treatment if needed and the credentials of the evaluator." (92 Ill. Admin. Code, ch. II, sec. 1001.440(a)(3).)

The hearing officer found plaintiff's alcohol assessment to be incomplete. While the evaluation letter included plaintiff's alcohol history, it did not include the results of objective testing, such as the Michigan Alcoholic Screening Test (hereinafter MAST test). The alcohol evaluator did find that plaintiff's score "on the MAST indicates family problems with his drinking prior to a year ago, AA attendance and the DUI arrest." However, as stated above, no MAST score was included, and plaintiff admitted that he attended only one meeting of Alcoholics Anonymous. The hearing officer, himself, indicated that this assessment was obviously based "on the apparent assumption that petitioner has had only one DUI arrest." It is therefore clear from the record that the alcohol counselor did not know about plaintiff's prior drunken driving conviction and implied consent suspension and also erroneously believed that plaintiff's participation in Alcoholics Anonymous was greater than a single meeting.

We believe that the alcohol assessment, required by the aforesaid rules, is necessary in order to properly evaluate an application for a permit. Accordingly, we must conclude that the incomplete nature of the evaluation, in question, and the counselor's apparent lack of knowledge as to plaintiff's other drunken driving conviction and the implied consent suspension bolsters defendant's determination to deny plaintiff a permit.

Plaintiff, citing *Franz v. Edgar* (1985), 133 Ill. App. 3d 513, 478 N.E.2d 1165, points out that in that case the appellate court con-

cluded that since there was no evidence that the applicant had a current drinking problem, defendant erred in denying him a permit. Plaintiff argues that we should follow this holding since in the present case there is no evidence that he has a present drinking problem. However, in *Franz*, the appellate court held that sections 1001.440(e)(f) (92 Ill. Admin. Code, ch. II, sec. 1001.440(e), (f)), which required an applicant to demonstrate a minimum of "documented abstinence" and which was used to evaluate the plaintiff's request for a permit in that case, did not comport with the basic precepts of due process. Since the court felt additionally that there was no evidence in the record which contradicted the applicant's evidence to the effect that he had overcome his problem, it concluded that defendant erred when it refused to grant plaintiff a permit. Here, we are dealing with the validity of an alcohol evaluation by a counselor who apparently was not apprised of the fact that plaintiff had been convicted twice for driving while under the influence of alcohol and also had had his license suspended on a separate occasion because he refused to take a breathalyzer test. It is also apparent from the counselor's language in his evaluation that the counselor assumed erroneously that plaintiff was attending Alcoholics Anonymous meetings on a regular basis. For these reasons, we must conclude that *Franz v. Edgar* is not applicable to the present matter.

Plaintiff also calls attention to several factual errors made in the findings of fact by defendant's hearing officer. We have carefully examined these factual errors and have determined that they are not material. Therefore, we must conclude that this contention is also without merit.

The judgment of the circuit court of Cook County is therefore affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.