JOHN W. WIXON, Plaintiff-Appellant, v. JIM EDGAR, Secretary of State, Defendant-Appellee.

Fourth District   No. 4—90—0634

Opinion filed June 26, 1991.—Rehearing denied August 1, 1991.

STEIGMANN, J., dissenting.

Ronald E. Boyer, of Boyer & Thompson, Ltd., of Watseka, for appellant.

Roland W. Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Eve Moran, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff John W. Wixon petitioned the Secretary of State (Secretary) seeking full reinstatement of his driving privileges, or in the alternative, a restricted driving permit (RDP). On April 23, 1990, the Secretary, upon the recommendation of the hearing officer, denied plaintiff both full reinstatement of his driving privileges and the RDP. Plaintiff sought administrative review of this decision in the circuit court of Sangamon County, which affirmed the Secretary's decision on

August 8, 1990. Plaintiff appeals that order, contending the Secretary's decision was against the manifest weight of the evidence and the Secretary erred in giving "no weight" to an alcohol evaluation submitted by plaintiff at the hearing. We reverse.

For reasons hereinafter stated, it is unnecessary to address the denial of the RDP.

At the time of the hearing, plaintiff was 32 years old and lived in Cissna Park, Illinois. He was married with two stepchildren and his wife was expecting a child in April 1990.

Plaintiff worked for 5½ years at Stockland Nitrogen Service, a business which sells fertilizers, chemicals, and seeds to farmers, as well as provides various repair and spraying services. Plaintiff's place of employment is located in Stockland, Illinois, which is approximately 20 miles from plaintiff's residence. Co-workers alternate in providing plaintiff transportation to and from work. While at work, when called upon to travel to various farmsteads to provide supplies or services, plaintiff is driven by another worker. Plaintiff has not possessed a driver's license during the course of his employment at Stockland Nitrogen Service. In the spring and fall, plaintiff worked seven days a week from 4 a.m. to 9 or 10 p.m. During the summer and winter months, plaintiff's day lasts from 7 a.m. to 5 p.m.

Plaintiff's wife does not drink alcohol; and plaintiff has been abstinent since February 1988, except he admitted to his wife and his alcohol counselor that he consumed one can of beer on December 24, 1989.

Plaintiff's driving record revealed several arrests beginning in 1976. Plaintiff has four speeding convictions, one reckless driving conviction, and one conviction for disregarding an official traffic-control device. Plaintiff's license was suspended on October 1, 1976, for having three moving violations in a 12-month period of time. Plaintiff had his license suspended on May 30, 1978, pursuant to a conviction for fleeing or attempting to elude a police officer. In 1978, plaintiff was convicted for not yielding the right-of-way at an intersection and illegal transportation of alcohol. The driving record shows defendant has two arrests for driving while under the influence (DUI), which occurred on October 13, 1979, and October 5, 1985. Plaintiff's license was revoked on July 22, 1986, pursuant to his DUI conviction for the October 5, 1985, incident. Plaintiff had two formal hearings in 1988 and 1989 seeking reinstatement of his license, both of which were denied. The driving record shows no traffic violations since October 5, 1985.

At the hearing, the Secretary submitted plaintiff's driving record, plaintiff's request for a hearing, and plaintiff's notice of hearing into evidence. The Secretary also asked the hearing officer to take judicial notice of plaintiff's files of his two prior hearings, to which the hearing officer acquiesced. The Secretary presented the original alcohol evaluation and two updates, a remedial-education verification, and a character letter from plaintiff's employer, as well as letters from various acquaintances of plaintiff.

Plaintiff testified at the hearing he had been abstinent from alcohol since February 1988, with the exception of one beer on December 24, 1989. Plaintiff stated he immediately told his wife and also told his alcohol counselor. Plaintiff testified he began counseling for his alcohol problem in February 1988. Plaintiff attended individual sessions with his counselor weekly, which lasted approximately 1½ hours each. Plaintiff attended these sessions for two months, but stopped attending after his counselor informed him he no longer needed to attend. Plaintiff stated he has no future intention of using alcohol because of his desire to eliminate the problem alcohol created for him and also because of a need to support his family. Plaintiff stated he wished to keep his job and obtain a driver's license.

Plaintiff underwent an alcohol evaluation on April 21, 1987. The evaluator wrote: "Client reports two DUI arrests, one illegal transportation arrest, and one reckless driving arrest." The evaluation stated plaintiff spent 30 days in jail in connection with his latest DUI arrest. The evaluator classified plaintiff at Level II—problematic use. 92 Ill. Adm. Code §1001.410 (Supp. 1988).

Two subsequent updates of this evaluation were conducted to be used at plaintiff's hearing. Both of these updated evaluations placed plaintiff at Level I—nonproblematic use. (92 Ill. Adm. Code §1001.410 (Supp. 1988).) The latest update, dated February 13, 1990, was done for the current hearing. At the hearing, plaintiff further testified he provided his evaluator with the prior decisions of the Secretary with respect to his previous two applications for reinstatement of driving privileges. Finally, plaintiff testified his evaluator had a copy of his driving record when she conducted the evaluations.

Plaintiff's wife also testified at the hearing. She stated she was aware of her husband's prior problems with substance abuse, but that he quit drinking just before they were married in June 1988. She testified she had not seen her husband drink alcohol since February 1988 and she herself does not drink alcohol. Plaintiff's wife testified she was unable to transport her husband to and from work because she also worked and she did not wish to leave their children home alone

in order to drive plaintiff to his place of employment. Finally, she stated plaintiff plays with his children in his spare time and is in the process of remodeling their home.

The hearing officer took official notice of the files from plaintiff's previous hearings and particularly noted the alcohol evaluations submitted at those hearings. The hearing officer found plaintiff successfully completed an alcohol-drug remedial-education course and plaintiff submitted an updated alcohol evaluation performed by a licensed agency.

However, the hearing officer afforded "no weight" to this evaluation. Specifically, the hearing officer found plaintiff had been arrested four times for DUI, but found the first evaluation only addressed two such arrests. This "major discrepancy" caused plaintiff's two previous applications for driving relief to be denied. The hearing officer concluded since there was no indication in the evidence that the evaluator was aware of four DUI arrests, no weight was to be afforded to the evaluation. Therefore, the hearing officer found the evidence at the hearing did not support the level of classification contained in the evaluation.

The hearing officer further found plaintiff had completed all the treatment recommended by the evaluator, but since the recommendation was based on erroneous information, the hearing officer questioned the appropriateness of the treatment recommendation. Because of these discrepancies in the evidence, the hearing officer found plaintiff could not be considered for relief and doubted plaintiff's credibility.

Based on these findings, the hearing officer concluded plaintiff failed to prove he would be a safe and responsible driver and that he would not endanger the public safety and welfare. Thus, the hearing officer recommended plaintiff's petition for full reinstatement of driving privileges or RDP be denied.

The Secretary adopted these findings, conclusions and recommendations on April 23, 1990. Plaintiff filed a complaint seeking administrative review of this decision on April 30, 1990. On August 8, 1990, the circuit court of Sangamon County held the Secretary's decision was not contrary to the manifest weight of the evidence and affirmed the Secretary's denial of plaintiff's petition. Plaintiff subsequently filed this appeal on September 6, 1990.

■ Findings and conclusions of an administrative agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) A court may not overturn the decision of an administrative body unless the authority of the administra-

tive body was exercised in an arbitrary or capricious manner or the decision was against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) A reviewing court may not reweigh the evidence or make factual findings, and an agency's decision is not contrary to the manifest weight of the evidence merely because the court would have decided the case differently. *Kennedy v. Edgar* (1990), 199 Ill. App. 3d 138, 556 N.E.2d 830.

Plaintiff contends the Secretary's decision was against the manifest weight of the evidence. Specifically, plaintiff argues the Secretary presented no evidence other than his driving record prior to 1985 to establish that plaintiff would not be a safe and responsible driver and would not endanger the public safety and welfare. The Secretary responds the decision was proper because the hearing officer correctly questioned the validity of the alcohol evaluation submitted by plaintiff. The Secretary asserts since the evaluator did not possess full knowledge of plaintiff's driving record, the classification of plaintiff at Level II and then a subsequent reclassification of plaintiff at Level I was questionable. Thus, plaintiff failed to prove he would not endanger the public safety and welfare.

We have searched the record, specifically the driving record provided by the Secretary of State. The record shows only two DUI arrests, October 13, 1979, and October 5, 1985. Contrary to the hearing officer's findings, the plaintiff was completely open and honest in informing the evaluator of his alcohol and drug abuse background. At the first evaluation, dated April 21, 1987, plaintiff acknowledged he first tasted alcohol at the age of 14, a first episode of intoxication at age 16 and was a problematic heavy drinker from 1980 to 1982. He painted a very poor picture of himself during this time. It is readily apparent the evaluator was keenly aware of plaintiff's prior abuse of alcohol and drugs.

Section 1001.440(b)(2) of the Illinois Administrative Code (92 Ill. Adm. Code §1001.440(b)(2) (Supp. 1988)) lists the necessary requirements for an applicant classified at Level II seeking any driving relief. Such applicant must document successful completion of an alcohol-drug remedial-education course and the treatment recommended by the evaluator. Clearly plaintiff has met both of these requirements. Plaintiff attended the remedial-education program from March 23, 1987, through April 21, 1987. Plaintiff's counselor verified completion of this treatment on April 21, 1987. Further, the evaluator recommended plaintiff attend outpatient alcohol treatment, which he did from February 1, 1988, through May 9, 1988. The evaluator indicated

this successful completion in her May 16, 1988, update of the original evaluation.

An applicant seeking any driving relief must also prove he does not have a current problem with alcohol, that he is a low or minimal risk to repeat past abusive behaviors and the operation of a motor vehicle while under the influence of alcohol, and comply with all other regulations. (92 Ill. Adm. Code §1001.440(b) (Supp. 1988).) Plaintiff has remained abstinent (with one minor deviation) since early 1988 and has had no traffic violations since October 1985. Between the time of his first report and the current hearing, plaintiff had dramatically altered his life-style. He married, now has three dependents, is gainfully employed and has a better outlook on life. Thus, plaintiff has done everything required of him to regain his driving privileges.

■ Section 1001.410 of the Illinois Administrative Code (92 Ill. Adm. Code §1001.410 (Supp. 1988)) provides the definitions of the terms used throughout the regulations. Level II—problematic use indicators include impairment in one or more significant life areas, a blood-alcohol concentration at the time of the most recent DUI arrest of 0.15 or greater, the ability to stop or control the use of alcohol, and the absence of withdrawal symptoms. (See also 77 Ill. Adm. Code §2056.310(c)(2) (Supp. 1987).) Clearly, an applicant's driving record alone does not constitute the entire basis for classification.

The evidence supports the original classification of plaintiff at Level II. The evaluator found impairment in three significant life areas, family, legal, and marital. The evaluator thoroughly noted plaintiff's history of alcohol abuse as well as illicit drug abuse. Plaintiff had the ability to control his alcohol abuse as shown by his decrease in consumption between 1980 and 1982 as well as his nearly complete withdrawal from alcohol use after February 1988. Plaintiff experienced no withdrawal symptoms when he chose to quit consuming alcohol. Plaintiff's test scores support a Level II classification. These factors indicate problematic use (Level II), but not alcohol dependency.

Additionally, the updated evaluations classified plaintiff a Level I (nonproblematic use). Level I, as defined by the Illinois Administrative Code "means no impairment in family, social, emotional, vocational, physical or behavioral functioning as a consequence of alcohol or other drug use. There is also an ability to stop or control use and an absence of serious withdrawal symptoms after stopping or reducing use. This pattern must be consistent over the past twelve months for an individual classified at this Level." 92 Ill. Adm. Code §1001.410, at 3518 (Supp. 1988).

The Secretary suggests the present case is similar to *Cusack v. Edgar* (1985), 137 Ill. App. 3d 505, 484 N.E.2d 1145. *Cusack* is distinguishable. First, the evaluation in the present case cannot be characterized as incomplete. It contains plaintiff's complete history of alcohol abuse as well as objective test scores. Next, in *Cusack*, the court stated there was no evidence to suggest the alcohol counselor was aware of the full extent of plaintiff's driving history. In contrast, plaintiff here testified he told his evaluator about his DUI arrests and provided her with copies of the orders from his two previous hearings which both indicate his total driving record. Plaintiff also testified his evaluator had a copy of his driving record. The plaintiff in *Cusack* had not taken any steps toward resolving his alcohol problem. The *Cusack* court stated:

> "We feel that the issuance to plaintiff of such permit a little more than [a] year after his last drunken driving conviction would deprecate the seriousness of plaintiff's poor driving record and would impose a significant risk to the public." (*Cusack*, 137 Ill. App. 3d at 511, 484 N.E.2d at 1149.)

Here, at the time of the administrative hearing, April 23, 1990, it had been over 4½ years since plaintiff's last driving violation. The legislature has mandated a one-year revocation of driving privileges. Plaintiff had completed all the treatment recommended by his evaluator. For those reasons, we are not persuaded by the court's reasoning in *Cusack* in application to the facts of this case.

Although in *Murdy* the Secretary made a determination that the petitioner there was a chronic alcoholic, we adopt the following statement of the supreme court:

> "We conclude that the Secretary's determination that plaintiff is a chronic alcoholic is not supported by the evidence. To the contrary, the evidence showed that he recognized the drinking problem and has controlled it." *Murdy*, 103 Ill. 2d at 394, 469 N.E.2d at 1090.

■ After thoroughly examining the original evaluation along with the two updates, we conclude the classification of plaintiff at Level I was proper. Plaintiff was, by all indications on this record, very candid with the evaluator as to his past abuse of alcohol and illicit drugs. Plaintiff testified he informed the evaluator about his complete driving history. Nothing in these evaluations suggests plaintiff attempted to conceal any negative information about himself. When a plaintiff has done everything necessary to regain his driving privileges, he should not be penalized for the inadequate reporting methods of his alcohol evaluator. Inasmuch as the Secretary's decision adopting the

hearing officer's recommendations and conclusions was against the manifest weight of the evidence, it must be reversed. The Secretary is ordered to reinstate plaintiff's full driving privileges.

Reversed.

SPITZ, J., concurs.

JUSTICE STEIGMANN, dissenting:

Plaintiff argues on appeal that the Secretary's decision was against the manifest weight of the evidence. The basis of this argument is that the Secretary presented no evidence other than plaintiff's driving record (prior to 1985) to establish that plaintiff (1) would not be a safe and responsible driver, and (2) would endanger the public safety and welfare. In my judgment, nothing beyond that driving record is required to establish these two propositions. Given how bad plaintiff's driving record is, I am unwilling to find the Secretary's conclusion (that plaintiff's driving privileges should not be restored) to be contrary to the manifest weight of the evidence, particularly regarding the issue of whether plaintiff would endanger the public safety and welfare.

In my judgment, this is not even a case of undue hardship; instead, it is a case of serious inconvenience. The record shows that plaintiff *is* getting to work and that his employer *is* making accommodations due to plaintiff's having no driving privileges. Undue hardship ought to mean that plaintiff is going to lose his job if he does not get his driving privileges restored, not merely that his circumstances will be difficult, seriously inconvenient, or expensive. Plaintiff is not even entitled to a RDP, let alone restoration of full driving privileges.

The majority opinion twice makes reference to defendant's having no driving violations since October 1985, suggesting thereby that this should have been a significant factor in April 1990, when the Secretary was deciding whether plaintiff's driving privileges should be restored. I disagree. Because defendant had no driver's license from October 1985 to April 1990, the absence of any traffic violations during this period shows only that plaintiff had not violated (or had not been caught violating) the prohibition against his driving a motor vehicle. It seems strange to me that an individual's forbearance from committing a Class A misdemeanor (driving while license revoked, in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 6—303)) should earn him the approbation of the Secretary or this court.

I confess I have no sympathy for the plight of this plaintiff or other convicted drunk drivers who whine to the courts about the Secretary's reluctance to restore their driving privileges. The costs and inconveniences associated with the loss of their driving privileges are the product of their dangerous criminal behavior. Too many drunk drivers, like this plaintiff, "get religion" too late; they are stuck with the consequences of their driving records, and they have earned society's skepticism regarding whether and when they may safely be returned to the highways.

In the present case, given plaintiff's miserable traffic record, I would require *many years* of both total abstinence and a demonstrable lack of criminality before I would feel comfortable seeing him back on the highways. Reversing the Secretary and restoring plaintiff's driving privileges, as the majority has done, suggest that this society is not yet serious about addressing the havoc on our highways created by drunk drivers.

I respectfully dissent.